1  LEON SANDERS
   19219 Northwood Ave.
2  Carson, Ca. 90746
   Ph.(310)637-6939
3  Fax.(310)762-9211

4  Plaintiff' In Pro-Se

5

6

FILED IN CLERK'S OFFICE.
U.S.D.C. Atlanta

MAR 1 9 2008

JAMES N. WATTEN, CLERK
By:
        Deputy Clerk

7                 UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF GEORGIA

9

10  LEON SANDERS,                              )
                                              )
11        Plaintiff'                          )  NO. CV 1-08-CV-0190JTC
                                              )
12     vs.                                    )  PLAINTIFF' OPPOSITION TO
                                              )  DEFENDANTS' WASHINGTON
13  U.S. GOVERNMENT, U.S. PRESIDENT,          )  MUTUAL BANK MOTION TO DISMISS
    U.S. CONGRESS, SOCIAL SECURITY            )  PLAINTIFF' COMPLAINT, WITH
14  COMMISSION, INTERNAL REVENUE              )  MEMORANDUM OF POINTS OF
    COMMOSSION, U.S. EMPLOYEES, AND           )  AUTHORITIES:
15  CLEANNET USA. INC. WASHINGTON             )
    MUTUAL BANK, MORGAN STANLEY, DEAN         )
16  WITTER CREDIT CORP. RAYTHEON              )
    (HUGHES) AIRCRAFT CO., AND does 1         )
17  through 10 inclusive.                     )
                                              )
18        Defendants                          )
    _____       )

19

20     Under Rules 12(b)(1), and (3), and (6) of the Federal Rules of

21  Civil Procedure, Washington Mutual Bank Motion to dismiss the

22  plaintiff' against Washington Mutual Bank, on following grounds:

23  1. pursuant to exhibit#6(herein) Plaintiff' complaint fails to

24  state a cause of action against this defendant for which relief

25  can be granted.

26  2. Defendant Pleads the affirmative defense of statute of limitation

27  3. Defendant Pleads the affirmative defense of res judicata.

28  ///

1
DECLARATION OF GEORGE M. HALIMI

2
1. GEORGE M. HALIMI, State and Declare: Exhibit#21(herein):

3
2. STATES: On or about October 15, 2004, I wrote two letters to

4
Morgan Stanley Dean Witter, and Washington Mutual, informing the

5
parties that Mr. Sanders believes that there are some discrepanies

6
regarding the interest, fees, and charges by your firms, I also

7
demanded from the two parties to provide my office with an

8
accounting for payments made, interest,charges, and charges for

9
the above-referenced loans. No response was made by the two

10
named parties.

11
PLAINTIFF' OPPOSE DEFENDANT MOTION TO DISMISS
PLAINTIFF COMPLAINT FOR THE FOLLOWING REASONS:

12

13
1. Plaintiff' attorney' George M. Halimi as stated above demanded

14
that Washington Mutual, and Morgan Stanley Dean Witter Credit

15
Corp. provide his office with accounting for payments made, and

16
interest charges, as the Law requires. but go no respond.

17
Washington Mutual, and Morgan Stanley, Dean Witter, had a duty

18
by Law to Provide Plaintiff' attorney with the document plaintiff

19
needed to properly Present his case to the court. Instead the

20
defendants want to use that as a defense of a Statute of Limitation

21
when they Held up Plaintiff' filing of his complaint with the

22
help of plaintiff' attorney George Halimi, Waited from Oct. 2004

23
to about August 2006 to claim statute of Limitation against the

24
plaintiff' the plaintiff' alleges that the time for filing his

25
complaint against the defendants is TOTALING BACK TO THE TIME

26
PLAINTIFF' ATTORNEY MR. HALIMI DEMANDED THAT THE DEFENDANTS

27
PROVIDE PLAINTIFF' WITH ACCOUNTING RECORDS ACCORDING TO THE LAW.

28
THEREFORE THE STATUTE OF LIMITATION WAS TOTALING FOR (2) YEARS.

2

1  2.On page #2 of the Washington Mutual Transcript, of the court

2  taken in court on Oct.24, 2006 Judge William Barry stated on

3  lines 10,11,&12 While Mr. Sanders has been left short by prior

4  attorney,, and I understand and sympathize with that,.--

5  On page #4 of court transcript Judge Barry STATED, The loan wasn't

6  paided off until recently and you managed to get under the gun

7  **-- Under the wire for the Filing of the Complaint in a timely

8  fashion for that.

9  3. On page #13 of the court transcript on lines#23 thru28 READS

10  AS FOLLOWING: I AM SORRY MR SANDERS, BUT THAT WHAT I'M GOING TO

11  TO HAVE TO DO. FOR A LOT OF REASONS NOT RELATED TO YOU, YOUR

12  YOUR CLAIM IS NOT TIMELY.

13  MR: SANDERS: YOUR HONOR, MAY I ASK A QUESTION? WHAT IS THE

14  STATUTE OF LIMITATIONS? WHAT IS THE COURT RULING ON THE STATUTE?

15  THE COURT: THE STATUTE OF LIMITATIONS FOR A BREACH OF CONTRACT

16  IS FOUR YEARS. THE STATUTE OF LIMITATIONS FOR FRAUD IS THREE.:

17  MR. SANDERS I'M WITHIN THE LIMITS, THE COURT: I DISAGREE.

18  4. In the court Transcript taken on November 3, 2006 on page#10,

19  on lines #22 thru 28 STATED AS FOLLOWING: SO WHAT I'M TRYING TO

20  ASK IS WHAT THE COURT, WHAT DATE IS THE COURT SAYING THAT THE

21  BANKRUPTCY OCCURRED,, THAT THE BREACH OCCURRED?

22  THE COURT: WELL, I DON'T HAVE THE EXACT DATE IN FRONT OF ME, BUT

23  WHAT I CAN TELL YOU IS MY RECOLLECTION IS THIS LOAN GOES BACK

24  INTO THE EARLY 1990S, Right?

25  MR. SANDERS: WE HAVE TWO DIFFERENT LOANS WE'RE TALKING ABOUT HERE.

26  5. AS THE PLAINTIFF' HAVE POINTED OUT ABOVE: THE JUDGE DIDN'T

27  KNOW WHEN THE BREACH OF CONTRACT OCCURED, SO THE PLAINTIFF' SAY

28  THE COURT ERRORED, IN IT'S STATUTE OF LIMITATION RULING.

6. On Defendants Pleads for affirmative <u>defense of re judicata.</u> Plaintiff' submit Exhibits A,&B(herein) that plaintiff File with Court a Motion For Reconsideration, but was denied by the Court a Hearing, on grounds that those Issues Had already Re-Dress in previous Court Hearing.

PLAINTIFF' ASK THE COURT TO TAKE JUDICIAL NOTICE OF THE COURT TRANSCRIPTS TAKEN ON OCTOBER 24, 2006 AND NOVEMBER 3, 2006 WILL SHOW THAT THE ISSUES PLAINTIFF RAISED IN HIS MOTION FOR THE RE*CONSIDERATION OF DEFENDANTS' MOTION FOR DEMURRER. ARE NOT. MENTION IN THE COURT TRANSCRIPTS FOR THOSE (2) court hearing.

7. Exhibit#4&4A (herein) will show that plaintiff' collect damages under California Civil Code 3294.

WHEREFORE:

PLAINTIFF' ASK THAT THE COURT DENY DEFENDANTS MOTION FOR TO DISMISS PLAINTIFF' COMPLAINT.

DATED: March 17, 2008

Leon Sanders
Leon Sanders

3-A

1   is the "legal certainty test," i.e., it must appear to a legal certainty that plaintiff's claim is for less
2   than the jurisdictional amount before dismissal is appropriate. See *St. Paul Mercury Indemnity Co.*
3   *v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("[I]f, from the face of the pleadings, it is apparent, to a
4   legal certainty, that the plaintiff cannot recover the amount claimed . . . and that his claim was
5   therefore [not] colorable for the purpose of conferring jurisdiction, the suit will be dismissed"). In
6   determining whether the amount in controversy requirement has been satisfied, the court must
7   consider claims for both actual and punitive damages. See *Bell v. Preferred Life Assur. Soc.*, 320
8   U.S. 238, 240 (1943). The court is not *required*, however, to accept plaintiff's entitlement to
9   punitive damages at face value. Rather, the court must determine whether the claim is arguably
10  *valid*: "Where it is clear to a legal certainty that the relief sought is unavailable, the amount
11  attributed to it may not be considered in computing the jurisdictional amount." *Gray v. Occidental*
12  *Life Ins. Co.*, 387 F.2d 935, 936 (3d Cir. 1968).

13          Ordinarily in California, a plaintiff may not recover punitive damages on a cause of action
14  for breach of contract. California Civil Code § 3294 provides:

15          "In an action for the breach of an obligation *not arising from contract*, where it is
16          proven by clear and convincing evidence that the defendant has been guilty of
17          oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may
18          recover damages for the sake of example and by way of punishing the defendant."

19  See 1B. Witkin, SUMMARY OF CALIFORNIA LAW, § 820 ("[Exemplary or punitive] damages are never
20  recoverable for breach of contract, no matter how willful or malicious, except where the wrongful
21  act is also a tort"). *wrongful act is a tort*

22          Because the claim Sanders proposes to add is a standard breach of contract cause of action,
23  he is not entitled to recover punitive damages under California law. The court, therefore, cannot
24  consider his prayer for such damages in determining whether he has met the amount in controversy
25  requirement.[19] The remaining damages Sanders seeks on the new breach of contract claim, coupled
26  ------------------------------

27          [19]Even if California law allowed for the recovery of punitive damages on breach of contract
28  claims, Sanders' ability to recover them is uncertain. Paragraph XIX.C of the Franchise Agreement
    contains a waiver of Sanders' to punitive damages:

1  with his original $35,400, do not satisfy the $75,000 amount in controversy requirement, and the
2  new claim does not cure the subject matter jurisdiction problem in this case.

3      **2.    The New Fraud Claim**

4      Sanders also seeks leave to add a cause of action for fraud against CleanNet U.S.A. and
5  Sepikas, its attorney. The claim is based on a declaration Sepikas filed in support of CleanNet
6  U.S.A.'s earlier motion to dismiss. Sanders cites paragraph 4 of the declaration, in which Sepikas
7  states:

8      "On August 24, 1999 I spoke with Plaintiff in an attempt to comply with Local Rule
9      7.41 to meet and confer to resolve this claim and possibly avoid having to file this
10     Motion to Dismiss. During this hour telephonic conference with Plaintiff, who is
11     representing himself, I set forth my opinion that this Complaint did not state
12     sufficient facts to proceed in Federal Court against my client who is not a party to this
13     contract with the Plaintiff nor did his Complaint state the minimum seventy five
14     thousand dollars ($75,000) in controversy, let alone clearly establish diversity of
15     citizenship for jurisdiction purpose. Unfortunately, Plaintiff chose not to voluntarily
16     dismiss his claim and thus this Motion became necessary."[20]

17  He alleges the statement is fraudulent:

18     "4. The plaintiff alleges Fraud against CleanNet U.S.A. Inc.[,] its attorney Joseph P.
19     Sepikas, (on behalf of CleanNet U.S.A. Inc.) Declaration of Joseph P. Sepikas, Esq.

20  ------------------------------

21     "Franchisee hereby irrevocably waives to the fullest extent permitted by law, any
22     right or claim for any punitive, exemplary, consequential, or speculative damages,
       including, without limitation, loss of profits, and agrees that in the event of a dispute,
23     except as otherwise provided herein, Franchisee shall be limited to the actual
       damages sustained."
24  See Franchise Agreement at FA-29. Sanders has not argued that this clause is invalid, and in order
25  to do so, he would have to establish that it did not constitute an intentional relinquishment of a
    known right. See, e.g., *J. Alexander Securities, Inc. v. Mendez*, 17 Cal.App.4th 1083,1093 (1993)
26  ("Without a voluntary and intentional relinquishment of a known right, respondent cannot be
    deemed to have waived her right to punitive damages").
27  ====

28     [20]Declaration of Joseph P. Sepikas, Esq., attached to CleanNet U.S.A.'s Motion to Dismiss
    Complaint, ¶ 4.



## Answers to Complaints
1:08-cv-00190-JTC Sanders v. U.S. Government et al
4months

### U.S. District Court

### Northern District of Georgia

#### Notice of Electronic Filing

The following transaction was entered by Suessmith, Donald on 3/6/2008 at 4:19 PM EST and filed on 3/6/2008

Case Name:          Sanders v. U.S. Government et al
Case Number:        1:08-cv-190
Filer:              Morgan Stanley, Dean Witter Credit Corp.
Document Number: 9

Docket Text:
**ANSWER to COMPLAINT by Morgan Stanley, Dean Witter Credit Corp.. Discovery ends on 8/4/2008.(Suessmith, Donald) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions.**

1:08-cv-190 Notice has been electronically mailed to:

Douglas L. Brooks    doug@douglasbrookslaw.com

Anthony Craig Cleland    craig.cleland@ogletreedeakins.com, kathy.molyneux@ogletreedeakins.com

Donald C. Suessmith , Jr    hsuessmith@mccurdyandcandler.com

1:08-cv-190 Notice has been delivered by other means to:

Leon Sanders
19219 Northwood Ave.
Carson City, CA 90746

The following document(s) are associated with this transaction:

Document description: Main Document
Original filename: n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1060868753 [Date=3/6/2008] [FileNumber=2302908-0]
[75d6283e2a97e76aa1f4ca4bd039eacdddea8e14c2451307a50d3fae4dd5d94e93d4
92caa72fc29dbf7854a009a60ea9570512569e8c6c03dc39722d2b69e772]]

*5*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEON SANDERS, | ) |
| plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. GOVERNTMENT, et al., | ) |
| | ) |
| defendants. | ) |

CIVIL ACTION FILE
NO. 1:08-CV-0190-JTC

## ANSWER OF MORGAN STANLEY CREDIT CORPORATION

Comes now, Morgan Stanley Credit Corporation, defendant in the above styled

matter and files this its Answer to plaintiff's complaint and states as follows:

### FIRST DEFENSE

Plaintiff's complaint fails to state a cause of action against this defendant for

which relief can be granted.

### SECOND DEFENSE

Defendant pleads the affirmative defense of statute of limitations.

### THIRD DEFENSE

Defendant pleads the affirmative defense of res judicata.

### FOURTH DEFENSE

Defendant pleads the affirmative defense of waiver.

### FIFTH DEFENSE

Defendant pleads the affirmative defense of insufficient service of process of this

defendant.

6

## SIXTH DEFENSE

Plaintiff's assertion of fraud has not been stated with particularity and as a result defendant moves that plaintiff's contentions of fraud against this defendant be restated with particularity and failing that, said fraud claim be dismissed with prejudice.

## SEVENTH DEFENSE

The correct name of defendant is "Morgan Stanley Credit Corporation".

## EIGHTH DEFENSE

Defendant hereby responds to the paragraphs contained in plaintiff's complaint:

### 1.

No response is necessary to paragraph 1 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

### 2.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 2 of plaintiff's complaint.

### 3.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 3 of plaintiff's complaint.

### 4.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 4 of plaintiff's complaint.

5.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 5 of plaintiff's complaint.

6.

Defendant denies the contentions contained in paragraph 6 of plaintiff's complaint.

7.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 7 of plaintiff's complaint.

8.

No response is necessary to paragraph 8 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

9.

Defendant is without knowledge to ascertain the truth and veracity of the contentions contained in paragraph 9 of plaintiff's complaint.

10.

No response is necessary to paragraph 10 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

**11.**

No response is necessary to paragraph 11 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

**12.**

No response is necessary to paragraph 12 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

**13.**

No response is necessary to paragraph 13 of plaintiff's complaint. However to the extent one is deemed necessary, defendant denies the contentions stated and denies that plaintiff is entitled to the relief requested.

**14.**

Defendant denies each and every contention contained in plaintiff's complaint not specifically responded to above.

**WHEREFORE,** Defendant urges the court to dismiss plaintiff's complaint with prejudice and cast all cost of said action against plaintiff.

This the 6th day of March, 2008.

9

MCCURDY & CANDLER, L.L.C.

By: _____
Donald C. Suessmith, Jr.
State Bar No. 004480
Attorney for Morgan Stanley Credit
Corporation

250 E. Ponce de Leon Avenue
Suite 600
Decatur, Georgia 30030
TEL: 404-214-5252
FAX: 678-891-5723
hsuessmith@mccurdycandler.com

*10*

1

2  LAW OFFICES OF KIMBERLY A. FANADY
    KIMBERLY A. FANADY, SBN: 139589

3  180 Montgomery Street, Suite 940
    San Francisco, California 94104

4  Telephone:  (415) 986-8467
    Facsimile:  (415) 986-8469

5

6  Attorney for Defendant
    Morgan Stanley Credit Corporation

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF LOS ANGELES

10                 UNLIMITED JURISDICTION

11

12

13  LEON SANDERS,

14                        Case No. TC020274

                 Plaintiff,

15                        DEFENDANT MORGAN
        -v-                    STANLEY CREDIT CORP.'S

16                        NOTICE OF DEMURRER
    WASHINGTON MUTUAL BANK, MORGAN STANLEY  AND DEMURRER TO

17  DEAN WITTER CREDIT CORP., and DOES 1 through 5  PLAINTIFF'S COMPLAINT
    inclusive,

18

                     Defendants.      Date: November 3, 2006

19                        Time: 9:00 AM

20                        Dept.: B

21

22

23

24

25

26

27

28  Notice of Demurrer

    USActive 5601957.1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on November 3, 2006 at 9:00 AM, or as soon thereafter as counsel may be heard, in Department B of this Court, located at 200 W. Compton Blvd., Compton, California 90220, Plaintiff and Defendant Morgan Stanley Credit Corporation will demur, pursuant to Code of Civil Procedure §430.10, to the causes of action asserted in Plaintiff's Complaint, on the following grounds:

1.     Plaintiff has failed to state a cause of action for breach of contract, fraud and violation of the Truth in Lending Act (Code of Civil Procedure §410,10(e)); and

2.     The causes of action asserted by Plaintiff for breach of contract, fraud and violation of the Truth in Lending Act are uncertain (Code of Civil Procedure §410.10(f)).

This motion will be based on this notice, the memorandum of points and authorities filed in support hereof, the oral argument of counsel, and such other and further evidence as may be presented at the hearing.

Dated:      October 2, 2006

                                        LAW OFFICES OF KIMBERLY A. FANADY

                                        By: _____
                                            Kimberly A. Fanady

                                        *Attorneys for Defendant Morgan Stanley Credit
                                        Corp.*

Notice of Demurrer

*1 2*

## PROOF OF SERVICE

I am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is: 180 Montgomery St., Suite 940, San Francisco, CA 94104.

On this date I served the following document(s): .

1.   Defendant Morgan Stanley Credit Corp.'s Notice of Demurrer and Demurrer to Plaintiff's Complaint

2.   Defendant Morgan Stanley Credit Corp.'s Memorandum of Points and Authorities in Support of Demurrer to Plaintiff's Complaint

[x] By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post office mail at San Francisco, CA, addressed as set forth below. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit:  · ·

Mr. Leon Sanders
19219 Northwood Ave.
Carson CA 90746
Plaintiff In Propria Persona

[ ]   By transmitting a true copy thereof via facsimile transmission to the facsimile telephone number referenced below;

[ ]   By personally delivering a true copy thereof to the person and/or office of the person at the address set forth below;

[ ]   By delivering a true copy thereof by Express Mail to be delivered to the person at the address set forth below via airbill no.:

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on October 2, 2006 at San Francisco, California.

KIMBERLY A. FANADY

DEAN WITTER CREDIT CORPORATION
Payment and Advance History

unt ID :   9102390343517        Name : LEON SANDERS

---

| ctive Date | Process Date | Tran.Code | $_Amount | $_Principal | $_Interest | $_Others | Principal Bal. |
|---|---|---|---|---|---|---|---|

ents and Payment Reversals From 1/1/94

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| APR-1996 | 20-APR-1996 | PMT | 476.13 | 0.00 | 476.13 | 0.00 | 39584.44 |
| MAY-1996 | 20-MAY-1996 | PMT | 476.13 | 0.00 | 476.13 | 0.00 | 39584.44 |
| JUN-1996 | 17-JUN-1996 | PMT | 476.13 | 0.00 | 476.13 | 0.00 | 39584.44 |
| AUG-1996 | 02-AUG-1996 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39584.44 |
| AUG-1996 | 30-AUG-1996 | PMT | 487.88 | 69.97 | 417.91 | 0.00 | 39514.47 |
| OCT-1996 | 31-OCT-1996 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| DEC-1996 | 03-DEC-1996 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JAN-1997 | 31-JAN-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| FEB-1997 | 28-FEB-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| MAR-1997 | 31-MAR-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| APR-1997 | 30-APR-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| MAY-1997 | 30-MAY-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1997 | 30-JUN-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUL-1997 | 31-JUL-1997 | PMT | 487.88 | 0.00 | 0.00 | 0.00 | 39514.47 |
| JUL-1997 | 08-AUG-1997 | VOID | 487.88 | 0.00 | 0.00 | 0.00 | 39514.47 |
| AUG-1997 | 30-AUG-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| AUG-1997 | 30-AUG-1997 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 16-JUN-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 16-JUN-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 16-JUN-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 16-JUN-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 17-JUN-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JUN-1998 | 23-JUN-1998 | PMT | 460.17 | 0.00 | 460.17 | 0.00 | 39514.47 |
| JUL-1998 | 24-JUL-1998 | PMT | 119.00 | 0.00 | 119.00 | 0.00 | 39514.47 |
| JUL-1998 | 24-JUL-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| SEP-1998 | 15-SEP-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| SEP-1998 | 15-SEP-1998 | PMT | 118.99 | 0.00 | 0.00 | 118.99 | 39514.47 |
| SEP-1998 | 15-SEP-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| SEP-1998 | 29-SEP-1998 | PMT | 124.11 | 0.00 | 0.00 | 124.11 | 39514.47 |
| OCT-1998 | 06-OCT-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| OCT-1998 | 28-OCT-1998 | PMT | 119.50 | 0.00 | 0.00 | 119.50 | 39514.47 |
| NOV-1998 | 09-NOV-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| NOV-1998 | 25-NOV-1998 | PMT | 119.50 | 0.00 | 0.00 | 119.50 | 39514.47 |
| DEC-1998 | 10-DEC-1998 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| DEC-1998 | 21-DEC-1998 | PMT | 25.53 | 0.00 | 25.53 | 0.00 | 39514.47 |
| DEC-1998 | 21-DEC-1998 | PMT | 93.97 | 0.00 | 0.00 | 93.97 | 39514.47 |
| JAN-1999 | 12-JAN-1999 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| JAN-1999 | 25-JAN-1999 | PMT | 119.50 | 0.00 | 119.50 | 0.00 | 39514.47 |
| FEB-1999 | 09-FEB-1999 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 39514.47 |
| FEB-1999 | 19-FEB-1999 | PMT | 119.50 | 0.00 | 119.50 | 0.00 | 39514.47 |
| MAR-1999 | 09-MAR-1999 | PMT | 487.88 | 107.60 | 380.28 | 0.00 | 39406.87 |
| MAR-1999 | 22-MAR-1999 | PMT | 119.50 | 0.00 | 119.50 | 0.00 | 39406.87 |
| APR-1999 | 07-APR-1999 | PMT | 487.88 | 216.01 | 271.87 | 0.00 | 39190.86 |
| MAY-1999 | 06-MAY-1999 | PMT | 115.14 | 0.00 | 115.14 | 0.00 | 39190.86 |
| MAY-1999 | 05-MAY-1999 | PMT | 487.88 | 227.22 | 260.66 | 0.00 | 38963.64 |
| MAY-1999 | 25-MAY-1999 | PMT | 115.15 | 0.00 | 115.15 | 0.00 | 38963.64 |

14

DEAN WITTER CREDIT CORPORATION

Payment and Advance History

20-OCT-2004

3

Account ID :   9402390341517       Name : LEON SANDERS

| Effective Date | Process Date | Tran.Code | $_Amount | $_Principal | $_Interest | $_Others | Principal Bal. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Payments and Payment Reversals From 3/1/94

| 03-JUN-1999 | 04-JUN-1999 | PMT | 487.88 | 202.72 | 285.16 | 0.00 | 38760.92 |
| 21-JUN-1999 | 22-JUN-1999 | PMT | 115.15 | 0.00 | 115.15 | 0.00 | 38760.92 |
| 06-JUL-1999 | 07-JUL-1999 | PMT | 487.88 | 164.98 | 322.90 | 0.00 | 38595.94 |
| 22-JUL-1999 | 23-JUL-1999 | PMT | 115.15 | 0.00 | 115.15 | 0.00 | 38595.94 |
| 04-AUG-1999 | 05-AUG-1999 | PMT | 487.88 | 219.71 | 268.17 | 0.00 | 38376.23 |
| 20-AUG-1999 | 21-AUG-1999 | PMT | 115.16 | 0.00 | 115.16 | 0.00 | 38376.23 |
| 07-SEP-1999 | 08-SEP-1999 | PMT | 487.88 | 156.19 | 331.69 | 0.00 | 38220.04 |
| 30-SEP-1999 | 01-OCT-1999 | PMT | 115.15 | 0.00 | 115.15 | 0.00 | 38220.04 |
| 04-OCT-1999 | 05-OCT-1999 | PMT | 487.88 | 249.63 | 238.25 | 0.00 | 37970.41 |
| 26-OCT-1999 | 26-OCT-1999 | PMT | 101.58 | 0.00 | 101.58 | 0.00 | 37970.41 |
| 11-NOV-1999 | 12-NOV-1999 | PMT | 487.88 | 175.32 | 312.56 | 0.00 | 37795.09 |
| 31-NOV-1999 | 23-NOV-1999 | PMT | 50.64 | 0.00 | 50.64 | 0.00 | 37795.09 |
| 08-DEC-1999 | 10-DEC-1999 | PMT | 487.88 | 176.10 | 311.78 | 0.00 | 37618.99 |
| 20-DEC-1999 | 20-DEC-1999 | PMT | 116.11 | 0.00 | 116.11 | 0.00 | 37618.99 |
| 10-JAN-2000 | 11-JAN-2000 | PMT | 487.88 | 192.08 | 295.80 | 0.00 | 37426.91 |
| 25-JAN-2000 | 25-JAN-2000 | PMT | 116.11 | 0.00 | 116.11 | 0.00 | 37426.91 |
| 21-FEB-2000 | 22-FEB-2000 | PMT | 487.88 | 67.13 | 420.75 | 0.00 | 37359.78 |
| 25-FEB-2000 | 24-FEB-2000 | PMT | 116.11 | 90.59 | 25.52 | 0.00 | 37269.19 |
| 14-MAR-2000 | 15-MAR-2000 | PMT | 487.88 | 233.31 | 254.57 | 0.00 | 37035.88 |
| 24-MAR-2000 | 24-MAR-2000 | PMT | 116.11 | 0.00 | 116.11 | 0.00 | 37035.88 |
| 10-APR-2000 | 11-APR-2000 | PMT | 487.88 | 262.47 | 225.41 | 0.00 | 36773.41 |
| 25-APR-2000 | 25-APR-2000 | PMT | 116.11 | 0.00 | 116.11 | 0.00 | 36773.41 |
| 12-MAY-2000 | 15-MAY-2000 | PMT | 487.88 | 202.10 | 285.78 | 0.00 | 36571.31 |
| 26-MAY-2000 | 30-MAY-2000 | PMT | 116.10 | 0.00 | 116.10 | 0.00 | 36571.31 |
| 13-JUN-2000 | 13-JUN-2000 | PMT | 487.88 | 216.78 | 271.10 | 0.00 | 36354.53 |
| 11-JUL-2000 | 12-JUL-2000 | PMT | 487.88 | 127.81 | 360.07 | 0.00 | 36226.72 |
| 26-JUL-2000 | 24-JUL-2000 | PMT | 242.07 | 81.23 | 160.84 | 0.00 | 36145.49 |
| 14-AUG-2000 | 15-AUG-2000 | PMT | 487.88 | 228.64 | 259.24 | 0.00 | 35916.85 |
| 18-AUG-2000 | 29-AUG-2000 | PMT | 102.24 | 0.00 | 102.24 | 0.00 | 35916.85 |
| 14-SEP-2000 | 15-SEP-2000 | PMT | 487.88 | 209.85 | 278.03 | 0.00 | 35707.00 |
| 1-OCT-2000 | 12-OCT-2000 | PMT | 487.88 | 158.62 | 329.26 | 0.00 | 35548.38 |
| 3-NOV-2000 | 14-NOV-2000 | PMT | 487.88 | 87.23 | 400.65 | 0.00 | 35461.15 |
| 3-DEC-2000 | 14-DEC-2000 | PMT | 487.88 | 124.55 | 363.33 | 0.00 | 35336.60 |
| 2-JAN-2001 | 16-JAN-2001 | PMT | 487.88 | 125.43 | 362.45 | 0.00 | 35211.17 |
| 2-FEB-2001 | 11-FEB-2001 | PMT | 487.88 | 114.06 | 373.82 | 0.00 | 35097.11 |
| 9-MAR-2001 | 29-MAR-2001 | PMT | 487.88 | 0.00 | 487.88 | 0.00 | 35097.11 |
| 3-APR-2001 | 13-APR-2001 | PMT | 487.88 | 290.64 | 197.24 | 0.00 | 34806.47 |
| 1-MAY-2001 | 15-MAY-2001 | PMT | 487.88 | 82.60 | 405.28 | 0.00 | 34723.87 |
| 1-JUN-2001 | 11-JUN-2001 | PMT | 487.88 | 190.59 | 297.29 | 0.00 | 34533.28 |
| 1-JUL-2001 | 16-JUL-2001 | PMT | 487.88 | 38.47 | 449.41 | 0.00 | 34494.81 |
| 1-AUG-2001 | 13-AUG-2001 | PMT | 487.88 | 157.11 | 330.77 | 0.00 | 34337.70 |
| 1-SEP-2001 | 11-SEP-2001 | PMT | 487.88 | 146.86 | 341.02 | 0.00 | 34190.84 |
| 1-OCT-2001 | 15-OCT-2001 | PMT | 487.88 | 89.76 | 398.12 | 0.00 | 34101.08 |
| 1-NOV-2001 | 12-NOV-2001 | PMT | 487.88 | 160.89 | 326.99 | 0.00 | 33940.19 |
| 1-DEC-2001 | 11-DEC-2001 | PMT | 487.88 | 150.80 | 337.08 | 0.00 | 33789.19 |
| 1-JAN-2002 | 11-JAN-2002 | PMT | 487.88 | 129.16 | 358.72 | 0.00 | 33660.03 |

15

STANLEY DEAN WITTER CREDIT CORPORATION                    20-OCT-2004
Payment and Advance History

Account ID :  9402350363517        Name : LEON SANDERS

```
Effective Date   Process Date    Tran.Code      $_Amount    $_Principal    $_Interest    $_Others    Principal Bal.
```

Payments and Payment Reversals From 1/1/94

| Effective Date | Process Date | Tran.Code | $_Amount | $_Principal | $_Interest | $_Others | Principal Bal. |
|---|---|---|---|---|---|---|---|
| 13-FEB-2002 | 13-FEB-2002 | PMT | 487.88 | 119.00 | 368.88 | 0.00 | 33541.23 |
| 13-MAR-2002 | 13-MAR-2002 | PMT | 487.88 | 166.25 | 321.63 | 0.00 | 33374.98 |
| 13-APR-2002 | 12-APR-2002 | PMT | 487.88 | 133.56 | 354.32 | 0.00 | 33241.42 |
| 13-MAY-2002 | 11-MAY-2002 | PMT | 487.88 | 134.97 | 352.91 | 0.00 | 33106.45 |
| 11-JUN-2002 | 11-JUN-2002 | PMT | 487.88 | 159.08 | 328.80 | 0.00 | 32947.37 |
| 17-JUL-2002 | 17-JUL-2002 | PMT | 487.88 | 81.68 | 406.20 | 0.00 | 32865.49 |
| 12-AUG-2002 | 12-AUG-2002 | PMT | 487.88 | 195.24 | 292.64 | 0.00 | 32670.45 |
| 13-SEP-2002 | 13-SEP-2002 | PMT | 487.88 | 129.85 | 358.03 | 0.00 | 32540.60 |
| 10-OCT-2002 | 10-OCT-2002 | PMT | 487.88 | 186.99 | 300.89 | 0.00 | 32353.61 |
| 13-NOV-2002 | 11-NOV-2002 | PMT | 487.88 | 133.32 | 354.56 | 0.00 | 32220.29 |
| 10-DEC-2002 | 10-DEC-2002 | PMT | 487.88 | 167.89 | 319.99 | 0.00 | 32052.40 |
| 13-JAN-2003 | 13-JAN-2003 | PMT | 487.88 | 114.66 | 373.22 | 0.00 | 31937.74 |
| 10-FEB-2003 | 10-FEB-2003 | PMT | 487.88 | 181.63 | 306.25 | 0.00 | 31756.11 |
| 11-MAR-2003 | 11-MAR-2003 | PMT | 487.88 | 172.50 | 315.38 | 0.00 | 31583.61 |
| 14-APR-2003 | 14-APR-2003 | PMT | 487.88 | 120.12 | 367.76 | 0.00 | 31463.49 |
| 12-MAY-2003 | 12-MAY-2003 | PMT | 487.88 | 186.18 | 301.70 | 0.00 | 31277.31 |
| 10-JUN-2003 | 10-JUN-2003 | PMT | 487.88 | 177.25 | 310.63 | 0.00 | 31100.06 |
| 14-JUL-2003 | 14-JUL-2003 | PMT | 487.88 | 125.75 | 362.13 | 0.00 | 30974.31 |
| 8-AUG-2003 | 20-AUG-2003 | PMT | 31505.65 | 28665.37 | 2586.28 | 54.00 | 2308.94 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Records :  27 | | ADV | 39584.44 | 39584.44 | 0.00 | 0.00 | |
| Total Records : 122 | | PMT | 70896.20 | 37478.50 | 40671.63 | 749.07 | |

16

| NOVUS CREDIT SERVICES INC. | CALIFORNIA HOME EQUITY DISCLOSURE STATEMENT |
|---|---|

In this statement the words "you" and "your" mean each and every person(s) who signs this statement. The words "we," "our" and "us" mean the Creditor named below.

| EFFECTIVE DATE OF FINANCE CHARGE: November 9, 1994 | ACCOUNT NO.: 940-2-390-343517 |
|---|---|
| **CREDITOR (US)** | **CUSTOMER (YOU)** |
| NOVUS CREDIT SERVICES INC.<br>13581 Teller Avenue<br>Suite 200<br>Irvine, CA  92715 1827 | LEON SANDERS<br>19219 NORTHWOOD AV<br>CARSON, CA  90746 |

### FEDERAL DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate: | The dollar amount the credit will cost you: | The amount of credit provided to you or on your behalf: | The amount you will have paid after you have made all payments as scheduled: |
| 13.683 % | $49,541.40 | $36,162.00 | $85,703.40 |

| YOUR PAYMENT SCHEDULE WILL BE: | | |
|---|---|---|
| **NUMBER OF PAYMENTS** | **AMOUNT OF PAYMENT** | **WHEN PAYMENTS ARE DUE** |
| 180 | $476.13 | Monthly beginning: DECEMBER 22, 1994<br>Last Payment due: NOVEMBER 22, 2009 |

**SECURITY:** This loan is secured by:

A Deed of Trust on real property located at 19219 NORTHWOOD AV , CARSON, CA  90746, and more specifically described in such Deed of Trust.

**FILING FEE:** $85.00

**LATE CHARGE:** If a payment is late 15 days, you will be charged: 5% of the payment.

**PREPAYMENT:** If you pay off early, you __ may ✗ will not have to pay a penalty; you __ may ✗ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date, and prepayment refunds.

**CREDIT INSURANCE DISCLOSURE:**
Neither Credit Life insurance nor Credit Disability insurance is required to obtain this loan and will not be provided unless you sign for and agree to pay the additional costs which is set forth below. If either or both of you desire to or desire not to purchase insurance, check the appropriate box and sign below.

Credit Life Insurance -- Single Coverage: NOT SELECTED

Credit Life Insurance -- Joint Coverage: NOT SELECTED

Credit Disability Insurance -- Single Coverage: NOT SELECTED

Credit Disability Insurance may be written on only one Borrower.
You must indicate your choice and sign the document in order to complete this disclosure. If no box is checked, no insurance shall be issued.

☐ I desire Single Coverage Credit Life Insurance for the premium and term specified above.

☐ I desire Credit Disability Insurance for the premium and term specified above.

☐ I/We desire Joint Coverage Credit Life Insurance for the premium and term specified above.

☐ I/We do not want Credit Life Insurance or Credit Disability Insurance.

☐ *Leon Sanders*
LEON SANDERS'S SIGNATURE          Age: 61    Date: 11-10-94

☐ _____          Age: ___   Date: ___

## PLEASE SEE REVERSE SIDE FOR ADDITIONAL SIGNATURE REQUIREMENTS

CA - HEDisclient -- 01/01/94          Page 1 of 2          17

1

2

3

4

5

6

7

8

9

Defendant Morgan Stanley Credit Corporation (formerly known as Morgan Stanley Dean Witter Credit Corporation, in turn formerly known as Novus Financial Corporation) ("MSCC") respectfully submits this Memorandum of Points and Authorities in support of its demurrer to Plaintiff's August 23, 2006 Complaint (the "Complaint" or "Compl.") pursuant to the Code of Civil Procedure §430.10.

10

11

## PRELIMINARY STATEMENT

12

13

14

15

Plaintiff, a former borrower from Defendant MSCC, brings claims for breach of contract and fraud against MSCC. Compl. p. 1-3. For the reasons set forth below, this demurrer should be sustained without leave to amend and the Complaint dismissed with prejudice as against MSCC.

16

17

18

19

First, Plaintiff's claims for breach of contract, fraud and violation of the Truth in Lending Act are barred by the applicable statute of limitations. This action was commenced more than a decade after November 11, 1994, when Plaintiff executed the subject loan agreement with ~~documents involance will show plaintiff did File Charge on Room~~ MSCC, and over five years after Plaintiff should have discovered and did discover the facts on

20

which his Complaint is based. Second, Plaintiff paid off the MSCC loan under his Chapter 13

21

22

23

24

25

26

bankruptcy plan, and thus is precluded by *res judicata* from challenging the amounts he paid because he failed to challenge any amount owed to MSCC at the time that his Chapter 13 bankruptcy plan was confirmed. Third, Plaintiff fails to plead the most basic facts necessary to state a cause of action for breach of contract or fraud. See Code of Civil Procedure §430.10(e). Indeed, the minimal facts alleged by Plaintiff in support of his breach of contract and fraud

27

28

MPA's in Support of Demurrer

2

18

1

2    claims are conclusory, ambiguous and unintelligible at best, and contradicted by the documents

3    attached to the Complaint.

4

5                        ## STATEMENT OF FACTS

6    **Parties**

7        Plaintiff, a former borrower from MSCC, brings claims for breach of contract and fraud

8    against MSCC. See Compl. p. 1-3. MSCC is a Delaware corporation, doing business in the state

9    of California. Among other things, MSCC is in the business of making mortgage loans.

10   **Allegations of Wrongdoing in the Complaint**

11       Plaintiff alleges that on or about November 10, 1994, MSCC made a second mortgage

12   loan to Plaintiff ("MSCC Loan"), Compl. p. 3, ¶1, and a loan agreement was executed by and

13   *Because of the fact that plaintiff File a timely*

14   between Plaintiff and MSCC ("Loan Agreement"). Id. *Claim with the Court trustee, that Bankruptcy time*

15       The exhibits to the Complaint show that on January 28, 1998, Plaintiff filed for Chapter

     *is Totaling, because the Claim in not Settle as yet*

16   13 bankruptcy. See Compl. Exhibit at p. 30 (Final Report and Account of Trustee and

17   Certification that the Estate has been Fully Administered ("Chapter 13 Final report")). On May

18   28, 1998, Plaintiff's Chapter 13 Plan was confirmed, pursuant to which payments were to be

19   made to MSCC. See id. On June 15, 2001, the United States Bankruptcy Court for the Central

20   District of California entered a discharge order officially releasing Plaintiff from all further debts

21   *plaintiff did File Claim with Court trustee before discharge*

     that may be discharged under the plan. See Compl. Exhibit at p. 29 (Discharge of Chapter 13

22   Trustee and Order Closing Case).

23

24       ·Now, on August 23, 2006, over a decade after Plaintiff entered into the Loan Agreement

25   with Morgan Stanley, and years after he has paid off the loan, Plaintiff purports to bring claims

26   for breach of contract and fraud against Washington Mutual Bank and MSCC. In a futile attempt

27   to plead such causes of action, Plaintiff alleges only that MSCC: (i) "fail[ed] to show interest

28   MPA's in Support of Demurrer

                        3

                       /9

1  GEORGE M. HALIMI
   1925 Century Park East, Suite 500
2  Los Angeles, California 90067
   Telephone: (310) 553-5562
3  Facsimile:  (310) 282-7578

4  Defendant in-Pro Per
5

6
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
7
           FOR THE COUNTY OF LOS ANGELES -- SMALL CLAIM DIVISION
8

9  LEON SANDERS,                    )    CASE NO. 06S01529
                                    )
10                                  )    DECLARATION OF GEORGE M.
11              Plaintiff,          )    HALIMI IN LIEU OF COURT
                                    )    TESTIMONY
12 v.                               )
                                    )
13 GEORGE M. HALIMI,                )    Date: September 25, 2006
                                    )    Time: 9:30 a.m.
14              Defendants.         )    Dept: N
                                    )
15 _____     )

16
                    DECLARATION OF GEORGE M. HALIMI
17
        I, GEORGE M. HALIMI, state and declare:
18
        1.      I am an attorney at law duly admitted to practice before all courts of the
19
   State of California, and I am the defendant in pro per in the above-entitled action.
20
        2.      I file this declaration in lieu of live testimony due to my court schedule on
21
   the morning of September 25, 2006. At the date of this trial, I have 4 other hearings in
22
   the Los Angeles Superior Court, Central District of Los Angeles County, representing
23
   my clients. As such, it would be impossible for me to attend the small claim court.
24
        3.      The trial on this matter was originally set for September 11, 2006. The
25
   trial was continued to September 25, 2006 due to my previous engagements.
26
        4.      On or about October 15, 2004, I entered into an agreement with plaintiff to
27
   represent him for a claim he had against the Morgan Stanly Dean Witter, and
28

                               1
   _____
       DECLARATION OF GEORGE M. HALIMI IN LIEU OF COURT TESTIMONY

1   Washington Mutual, for alleged loan fraud in regard to Mr. Sanders' property located at

2   19219 Northwood Avenue, Carson, California 90746-2734. It was agreed between the

3   parties that I would represent plaintiff based on an hourly fees of $200.00, and initial

4   retainer of $1,000.00. Mr. Sanders signed the retainer agreement, delivered to my

5   office the sum of $1,000.00, and over 100 pages of documents consisting of mainly

6   documents for payments made by Mr. Sanders to the lenders, interest charged, and

7   other fees and charges for the above-referenced loan. Documents were generated by

8   Morgan Stanly Dean Witter, and by Washington Mutual, for the loans on Mr. Sanders'

9   property.

10       5.       On or about October 15, 2004, I wrote two letters to Morgan Stanly Dean

11   Witter, and Washington Mutual, informing the parties that Mr. Sanders believes that

12   there are some discrepancies regarding the interest, fees, and charges by your firms. I

13   also demanded from the two parties to provide my office with an accounting for

14   payments made, interest charged, and other fees and charges for the above-referenced

15   loans. No response was made by the two named parties.

16       6.       Plaintiff contends that I wrote a 6-line letter to Morgan Stanly Dean Witter

17   and Washington Mutual. However, I spent over 5 hours of my time for initial

18   consultation with plaintiff, communication with plaintiff, review and analysis of over 100

19   pages of documents submitted by plaintiff, and for research. I finally informed plaintiff

20   that my investigation has revealed that his claim is based on fraud charges, which was

21   committed over ten years ago. As such, the statute of limitations would prevent any

22   action against the above-named parties.

23       7.       I declare under penalty of perjury under the laws of state of California, that

24   the foregoing is true and correct. Executed this 19th day of September 2006, at Los

25   Angeles, California.

26

27                                                          GEORGE M. HALIMI

28

                                          2              21

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action; my business address is:

                1925 Century Park East, Suite 500
                Los Angeles, California 90067

      On September 19, 2006, I served the foregoing documents entitled "**DECLARATION OF GEORGE M. HALIMI IN LIEU OF COURT TESTIMONY**" on all interested parties in this action:

[ ]     by placing a true copy thereof enclosed in a sealed envelope addressed as stated in attached service list.

[X]     by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

      Mr. Leon Sanders

      19219 Northwood Avenue
      Carson, California 90746-2734

[ ]     VIA FAX –

[X]     (BY MAIL) -- First Class

[ ]     I deposited such envelope in the mail at Los Angeles , California.  The envelope was mailed with postage thereon fully prepaid.

[X]     I caused such envelope to be deposited in the mail at Los Angeles , California.  The envelope was mailed with postage thereon fully prepaid.

      I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in the affidavit.

[ ]     (BY PERSONAL SERVICE) I delivered such envelope by hand to the office of the addressee.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on September 19, 2006, at Los Angeles, California.

                GEORGE M. HALIMI

1  LEON SANDERS
   19219 Northwood Ave.
2  Carson, Ca. 90746
   (310)637-6939  Ph.#
3  (310)762-9211 Fax.#

4

5  CALIFORNIA STATE BAR ASSOCIATION         To:
   1149 South Hill Street                   1. GEORGE M. HALIMI,
6  Los Angeles, Ca. 90015-2299                Attorney At Law
                                              1925 Century Park East, Ste. 50
7                                             Los Angeles, Ca. 90067

8  Re: Complaint against Attorney GEORGE M. HALIMI FOR:
             BREACH OF CONTRACT AND FRAUD:
9

10  1. pursuant to ATTORNEY GEORGE M. HALIMI, DECLARATION, in small

11  Claim Court set for Sept. 25, 2006, where he Declared under the

12  penalty of Perjury. Attorney Halimi Claim in Small Court that he

13  (on lines 17&18 that he spent (5 hours of his time in Consultation

14  and 100 pages of documents of mostly payment receipts. but when

15  the Judge in small claim court asked him to produce Receipts

16  showing that he sent plaintiff bills supporting his claim he

17  told the judge that his Secretary must have sent them to the

18  plaintiff. Plaintiff told the Judge that he hadn't seen Attorney

19  Halimi since Oct. 2004 much Less had Consultation with Attorney

20  Halimi since Oct. 2004.

21  2. Plaintiff' (Leon Sanders) ask the THE CALIFORNIA STATE BAR ASSO.

22  TO instruct Attorney Halimi to send me Receipts, Income Tax records

23  showing that he received payments from Leon Sanders for the allege

24  5 hours of service he Claim. in Exhibit #9-11 (herein).

25  3. Exhibits#5-7 (herein) attorney Halimi stated in Exhibit #5

26  that he was ready to file my Complaint, but in the next Letter

27  exhibit #7 he state that he has investigated my case and found

28  that statue of Limitation has expired. after 10 years.

                                    17      23

4. Documents Enclosed will show that ATTORNEY MICHAEL B. TENNATT, FOR WASHINGTON MUTUAL BANK, AND ATTORNEY KIMBERLY A. FANADY, for MORGAN STANLEY DEAN WITTER, both Defebdants Claim a (3) years statue of Limitation for which plaintiff File his Complaint on 8/23/2006 and the (3) years would be 8/25/2006 (20) days before 3 years would have expired. Plaintiff(see exhibit #3) allege that Attorney Halimi have tried to allow the 3 years to expire before filing plaintiff Complaint. This is Mal-Practice and obstruction of Justice, which is a Crime.

5. Plaintiff, ask THE CALIFORNIA STATE BAR ASSOCIATION TO instruct Attorney Halimi to send Plaintiff the Allege RESBARCH DOCUMENTS he claim he research for the 5 hours he claim. when he sent me my Biles in August 2006 2 months after the Bar Association told him to send me, there was no documents in my file but the documents I gave him when I was in his office for initial Consultation before he drew up the Attorney Agreement, PLAINTIFF( Leon Sanders Ask The Bar Association To Sanction, Attorney Halimi.

6. Attorney Halimi, is a Officer Of The Court, and as a Attorney has a Professional Code Of Conduct to Uphold. and his behavior toward me has been anything but Professional.

7. EXHIBIT # 8 (herein) is a Small Claim Judgment against Attorney Halimi, but to'this date he hasn't Paided that Judgment.

Dated: 10/9/2006

*Leon Sanders*
Leon Sanders

2

24

LEON SANDERS
19219 Northwood Ave.
Carson, Ca. 90746
Ph.(310)637-6939
Fax(310)762-9211


THE STATE BAR OF CALIFORNIA
1149 South Hill Street
Los Angeles, California 90015-2299

Refer: Case No. 06-17618

Enclosed are documents to support my claim that Attorney George Halimi,
Attorney Michael B. Tannatt, and Attorney Kimberly conspried to not produce
documents pertaining to my Loan payments pursuant to filing a timely Complaint
in Superior Court about the $10,000.00 over-payments that Washington Mutual Bank
and over $10,000.00 in over payments that Morgan Stanley Demanded fron Escrow
when Escrow Closed.

I had been asking for years for washington Mutual Bank and Morgan Stanley
Dean witter to furnish me with a correct AMORTIZATION SCHEDULE records of my
Loan payments, which by Law I am entitle under the Truth-In- Lending Act,,
the Lender are Required to Furnish me with a correct Accounting of the Loan
Payments which they are Servicing under the Loan Agreement.

In 0 Oct. 2004 I hired Attorney George Hahimi to file a complaint against
Washington Mutual Bank, and Morgan Stanley Dean Witter to recover over $10,000.0
in over-payments from Washington Mutual Bank, and over $10,000.00 in over
payment from Morgan Stanley Dean Witter that they sent into Escrow when the
Loan was paid off on Aug. 25, 2003. Washington Mutual Bank and Morgan Stanley
Dean Witter would not send my Attorney George Halimi any Payment records at
all after waiting around Feb. 2006 I ask my attorney George Halimi about the
Case and he said he wouldn't Represent me as He agreed in the Attorney?Client
Agreement we had signed. It was August 2006 before attorney would send me my
Files so I could proceed with another Attorney. I Rust and File a Complaint
on Aug. 23, 2006 Just (2) days before the (3) days would have expired for the
(3) years Statute Of Limitation. I told the Court That because Washington Mutual
and Morgan Stanley Dean Witter had Refused to send me Loan Payment Records so
I could File a complete Accounting of my Loan Payments, That the time Should
be TOLLING UNTIL I FILE THE COMPLAINT, but the court would not accept my Motion
For Reconsideration. I will Hire another Attorney And RE*-File My Complaint.

Dated: 12/11/2006

Leon Sanders
Leon Sanders

9  25



THE STATE BAR
OF CALIFORNIA

OFFICE OF THE CHIEF TRIAL COUNSEL
AUDIT & REVIEW

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1612
TDD: (213) 765-1566
FAX: (213) 765-1442
http://www.calbar.ca.gov

November 9, 2006

Leon Sanders
19219 Northwood Avenue
Carson, CA 90746

RE:  Case No.:  06-17618
      Respondent:  George Halimi

Dear Mr. Sanders:

Audit and Review has received your correspondence, dated October 19, 2006, requesting reconsideration of the decision of a State Bar attorney to close your complaint. Due to our current volume of cases, the material in the file, and the need to review each one carefully, we cannot estimate the date your matter will be assigned. We appreciate your patience.

We can assure you that once an attorney has reviewed your file, you will receive a letter advising you of our decision. If it is our determination that the matter should be re-opened, you will be advised and the matter will be re-assigned for further appropriate action. If it is our decision that the matter should remain closed, you will be advised of your right to petition the Supreme Court of California. If you do not hear from us, it is because the matter has not yet been assigned or reviewed.

If you would like us to consider new information other than what you have previously provided to us, please advise us, in writing. This is a more effective means for us to receive and fully evaluate your concerns. Include copies (only) of any documentation that you have not previously provided which you think it is important for us to review. Do not re-send information or documentation that you have already provided. You should send your written comments or information to: Audit and Review, Office of the Chief Trial Counsel, State Bar of California, 1149 South Hill Street, Los Angeles, California 90015.

The State Bar is not your attorney. The State Bar's function is to determine whether a particular complaint warrants disciplinary action. If you believe that you have a civil, criminal or administrative claim related to your complaint, you should consult an attorney regarding any available remedies. You should contact your local or county bar association for referral information.

OFFICE OF THE CHIEF TRIAL COUNSEL/AUDIT AND REVIEW
N02

PO  26

(818) 349-2734.

SENT TO FAX #.(___):_____

REF #  _____

# FAX
# COVER SHEET

DATE: 12/9/2006                    Refer: Case No. TC 020274

TO: WASHINGTON MUTUAL BANK    ATTN: ATTORNEY MICHAEL B. TANNATT

FROM:           LEON SANDERS

# OF PAGES:        (2)              PLUS COVER

COMMENTS: I will be hiring another Attorney and Re-File

My Complaint in another Superior Court difference from
Judge William Barry because of his Court Bias to the Plaintiff

I am also sending you a copy of my filing of a Complaint against attorney
George Halmi, attorney Michael B. Tannant, and Attorney Kimberly A. Fanady
for Comspring to Violate Plaintiff Civil Rights by with holding mortgage
payment records that by Law, Plaintiff was entitle to before filing his

his Complaint in Superior Court and the time for filing should have been
(TOLLING) until plaintiff receive Loan records Yet attorney fro washington
Mutual Bank, and Morgan stanley alleges that the time for filing limitation
has exspired , when they are φ the reason for plaintiff not fitting early
because Lenders refused to furnish documents Relative to Filing Proper
Court Complaint Relative to His Case.

PLEASE TAKE NOTICE: (document enclosed)   LEON SANDERS
                                          19219 S. Northwood Ave.
FORMER CHAPTER 7 Trustee Sentenced        Carson, California 90746
for Bankruptcy Fraud                      Ph.(310)637-6939
Former chapter 7 trustee Robert Pryce     Fax.#(310)762-9211
was sentenced on July 18, 2005, in
Central District of California to 80
months in prison..

Plaintiff alleges that what Washington Mutual Bank did
when it took monies from fund that the court trustee
sent to them pursuant to the Bankruptcy Plan was FRAUD.

14   2·7



**THE STATE BAR
OF CALIFORNIA**

OFFICE OF THE CHIEF TRIAL COUNSEL
AUDIT & REVIEW

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1612
TDD: (213) 765-1566
FAX: (213) 765-1442
http://www.calbar.ca.gov

November 9, 2006

Leon Sanders
19219 Northwood Avenue
Carson, CA  90746

RE:   Case No.:      06-17618
      Respondent:  George Halimi

Dear Mr. Sanders:

Audit and Review has received your correspondence, dated October 19, 2006, requesting reconsideration of the decision of a State Bar attorney to close your complaint. Due to our current volume of cases, the material in the file, and the need to review each one carefully, we cannot estimate the date your matter will be assigned. We appreciate your patience.

We can assure you that once an attorney has reviewed your file, you will receive a letter advising you of our decision. If it is our determination that the matter should be re-opened, you will be advised and the matter will be re-assigned for further appropriate action. If it is our decision that the matter should remain closed, you will be advised of your right to petition the Supreme Court of California. **If you do not hear from us, it is because the matter has not yet been assigned or reviewed.**

If you would like us to consider new information other than what you have previously provided to us, please advise us, in writing. This is a more effective means for us to receive and fully evaluate your concerns. Include copies (only) of any documentation that you have not previously provided which you think it is important for us to review. **Do not re-send information or documentation that you have already provided.** You should send your written comments or information to: Audit and Review, Office of the Chief Trial Counsel, State Bar of California, 1149 South Hill Street, Los Angeles, California 90015.

The State Bar is not your attorney. The State Bar's function is to determine whether a particular complaint warrants disciplinary action. If you believe that you have a civil, criminal or administrative claim related to your complaint, you should consult an attorney regarding any available remedies. You should contact your local or county bar association for referral information.

OFFICE OF THE CHIEF TRIAL COUNSEL/AUDIT AND REVIEW
N02

⊬𝖗  2.8

### Serial Filer Sentenced to 22 Months in Prison

On April 8, 2005, serial filer Erik Steven Fierro, a/k/a Erik S. Fierro IV, Erik S. DuPont, and Erik S. Rockefeller, was sentenced to 22 months in prison and three years supervised release based on his guilty plea to false declarations in bankruptcy. Several hours before Fierro's original sentencing hearing on March 24, 2006, a bomb threat against the federal building was telephoned to Fierro's probation officer from a location less than 100 yards from Fierro's residence. Fierro was taken into custody.

### Former Chapter 7 Trustee Sentenced for Bankruptcy Fraud

Former chapter 7 trustee Robert D. Pryce, Jr., was sentenced on July 18, 2005, in the Central District of California to 80 months in prison on charges that included bankruptcy fraud. Pryce had pleaded guilty to receiving undisclosed fees from bankruptcy estates he was appointed to administer, and had agreed to cooperate with law enforcement agencies. However, as reflected in a sentencing letter submitted to the court by the U.S. Trustee's Los Angeles office, Pryce failed to cooperate with the U.S. Trustee and successor trustees in investigations to determine harm to the estates and in efforts to pursue claims against bonding companies that insured Pryce's performance as trustee. On the basis of this conduct, the court rejected recommendations for a lower sentence, noting the extensive harm Pryce caused to the estates and to the bankruptcy system, as well as the lack of remorse shown by Pryce after his plea. On September 06, 2005, Pryce was ordered to pay $1,884,462.55 in restitution to six bankruptcy estates and $2,100,000.00 to the bonding companies who paid out settlement amounts under his chapter 7 trustee bond. Despite argument by Pryce, the court ordered the sale of his residence within

the next 60 days and ordered that his family members, associates, friends, or anyone acting for him, to sign any documents necessary to facilitate the sale as Pryce had transferred the property in 2004 into his irrevocable family trust with his new wife as beneficiary.

### Debtor's Principals and Attorney Convicted

On June 20th, a federal jury in Los Angeles convicted two former executives of an advertising placement agency on various fraud and money laundering charges for stealing tens of millions of dollars from corporate clients such as Sears, Roebuck & Co. and Universal Studios, who paid their firm to place ads with broadcast media, including ABC, NBC and Warner Brothers. Thomas Edward Rubin, the chairman and CEO of Focus Media, Inc., a media placement agency once located in Santa Monica, was found guilty of 25 felony counts, including conspiracy, mail fraud, wire fraud, bankruptcy fraud and money laundering. Rubin faces a potential sentence of several hundred years in federal prison when he is sentenced on October 23. The same jury that convicted Rubin also determined that Focus Media's chief financial officer, Thomas Patrick Sullivan, was guilty of 27 counts that virtually overlapped those against Rubin. Sullivan also faces a lengthy prison term when he is sentenced on October 23 by United States District Judge Gary A. Feess. The third defendant in the case, attorney Geoffrey C. Mousseau, was found guilty of conspiracy, two counts of concealing a total of $500,000 in assets in a bankruptcy proceeding, one count of aiding and abetting the making of a false declaration in a bankruptcy proceeding, one count of perjury in a deposition in a bankruptcy proceeding, and one count of willfully withholding books and records in a bankruptcy proceeding. Mousseau is also

THE STATE BAR
OF CALIFORNIA

OFFICE OF THE CHIEF TRIAL COUNSEL
INTAKE

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1168
http://www.calbar.ca.gov

October 18, 2006

Leon Sanders
19219 Northwood Ave.
Carson, CA. 90746

RE:   Inquiry Number:     06-17618
      Respondent:         George M. Halimi

Dear Mr. Sanders:

Your complaint against George M. Halimi, received on 5/12/06, had been reviewed by a staff attorney to determine whether he violated the State Bar Act and/or the Rules of Professional Conduct and whether there was a basis for investigation for prosecution of his alleged conduct. After careful review and after taking into consideration all relevant factors, the State Bar has concluded that the matter did not warrant action.

You may wish to consult with other legal counsel regarding your available civil remedies. You may contact your local or county bar association to obtain the names of attorneys to assist you in this matter. The local bar association or county bar association in your area is: Lawyer Referral Service of the South Bay Bar Association, 3465 Torrance Blvd., Suite C, Torrance, CA 90503 (310) 543-9773 or (310) 543-8777.

If you dispute the fee you paid to George M. Halimi, you may contact the above listed local or county bar association for fee arbitration information. You may also contact the State Bar Fee Arbitration program at 180 Howard Street, San Francisco, California 94105-1639, if there is no local fee arbitration program in your local bar association.

We are maintaining closed our file at this time.

If you do not agree with the decision to close your complaint, you may request a review, in writing, within three (3) months of the date of this letter. Telephonic requests cannot be accepted. Include with your request any additional or new evidence and copies of documentation which you believe should be considered. You may make your written request to: Audit and Review, Office of the Chief Trial Counsel, State Bar of California, 1149 South Hill Street, Los Angeles, California 90015.

Very truly yours,

J. Cisneros
Complaint Analyst
Leon Sanders
JC

Dated: 10/19/2006

Dear Sir:
I ask the State AUDIT AND REVIEW, OFFICE OF CHIEF TRIAL:
of Attorney George M. Halimi DECLARATION TO THE COURT
which is fause The judge told Attorney Halimmi when we was in
small Claim Court on 25th of Sept. that the Bar Association
would Sanction him fro not sending my Documents to sooner
than 2 months after the Bar Association told him to do.
I ask the Bar association to Order him to send me Receipts
for hours he Claim. for Consultation that he did not give
to Plaintiff. To sign a false Declaration to the Court
should be in violation of Professional Conduct.
                            19/   30

1 | LEON SANDERS
19219 Northwood Ave.
2 | Carson, Ca. 90746
(310)637-6939  Ph.#
3 | (310)762-9211  Fax.#

4

5 | CALIFORNIA STATE BAR ASSOCIATION
1149 South Hill Street
6 | Los Angeles, Ca. 90015-2299

To:
1. GEORGE M. HALIMI,
Attorney At Law
1925 Century Park East, Ste.50
Los Angeles, Ca. 90067

7

8 | Re: Complaint against Attorney GEORGE M. HALIMI FOR:
BREACH OF CONTRACT AND FRAUD:
9

10 | 1. pursuant to ATTORNEY GEORGE M. HALIMI, DECLARATION, in small

11 | Claim Court set for Sept. 25, 2006, where he Declared under the

12 | penalty of Perjury. Attorney Halimi Claim in Small Court that he

13 | (on lines 17&18 that he spent (5 hours of his time in Consultation

14 | and 100 pages of documents of mostly payment receipts. but when

15 | the Judge in small claim court asked him to produce Receipts

16 | showing that he sent plaintiff bills supporting his claim he

17 | told the judge that his Secretary must have sent them to the

18 | plaintiff. Plaintiff told the Judge that he hadn't seen Attorney

19 | Halimi since Oct. 2004 much Less had Consultation with Attorney

20 | Halimi since Oct. 2004.

21 | 2.Plaintiff' (Leon Sanders) ask the THE CALIFORNIA STATE BAR ASSO.

22 | TO instruct Attorney Halimi to send me Receipts, Income Tax records

23 | showing that he received payments from Leon Sanders for the allege

24 | : 5 hours of service he Claim. in Exhibit #9-11 (herein).

25 | 3. Exhibits#5-7 (herein) attorney Halimi stated in Exhibit #5

26 | that he was ready to file my Complaint, but in the next Letter

27 | exhibit #7 he state that he has investigated my case and found

28 | that statue of Limitation has expired. after 10 years.

P# 31

1  4. Documents Enclosed will show that ATTORNEY MICHAEL B. TENNATT,
2  FOR WASHINGTON MUTUAL BANK, AND ATTORNEY KIMBERLY A. FANADY, for
3  MORGAN STANLEY DEAN WITTER, both Defehdants Claim a (3) years
4  statue of Limitation for which plaintiff File his Complaint on
5  8/23/2006 and the (3) years would be 8/25/2006 (20 days before
6  3 years would have expired. Plaintiff(see exhibit #3) allege that
7  Attorney Halimi have tried to allow the 3 years to expire before
8  filing plaintiff Complaint. This is Mal-Practice and obstruction
9  of Justice, which is a Crime.

10  5. Plaintiff, ask THE CALIFORNIA STATE BAR ASSOCIATION TO instruct
11  Attorney Halimi to send Plaintiff the Allege RESEARCH DOCUMENTS
12  he claim he research for the 5 hours he claim. when he sent me
13  my Files in August 2006 2 months after the Bar Association told
14  him to send me, there was no documents in my file but the documents
15  I gave him when I was in his office for initial Consultation before
16  he drew up the Attorney Agreement, PLAINTIFF( Leon Sanders Ask
17  The Bar Association To Sanction, Attorney Halimi.

18  6. Attorney Halimi, is a Officer Of The Court, and as a Attorney
19  has a Professional Code Of Conduct to Uphold. and his behavior
20  toward me has been anything but Professional.

21  7. EXHIBIT # 8 (herein) is a Small Claim Judgment against Attorney
22  Halimi, but to this date he hasn't Paided that Judgment.

23
24  Dated: 10/9/2006                          Leon Sanders
                                             Leon Sanders
25
26
27
28

                          2

                    79  32

# GEORGE M. HALIMI
ATTORNEY AT LAW
1925 CENTURY PARK EAST, SUITE 500
LOS ANGELES, CALIFORNIA 90067

Telephone (310) 553-5562
(323) 222-9005
Facsimile (310) 282-7578

November 2, 2006

Mr. Leon Sanders
19219 Northwood Avenue
Carson, California 90746-2734

Dear Mr. Sanders:

I have checked my files and do not have any other documents pertaining to your case.
Your file was returned to you completely.

Enclosed is the check in the sum of $260.00 pursuant to the Small Court order.

Very truly yours,

George M. Halimi

cc: The State Bar of California



THE STATE BAR
OF CALIFORNIA

OFFICE OF THE CHIEF TRIAL COUNSEL
AUDIT & REVIEW

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1612
TDD: (213) 765-1566
FAX: (213) 765-1442
http://www.calbar.ca.gov

November 9, 2006

Leon Sanders
19219 Northwood Avenue
Carson, CA  90746

RE:   Case No.:      06-17618
      Respondent:   George Halimi

Dear Mr. Sanders:

Audit and Review has received your correspondence, dated October 19, 2006, requesting reconsideration of the decision of a State Bar attorney to close your complaint. Due to our current volume of cases, the material in the file, and the need to review each one carefully, we cannot estimate the date your matter will be assigned. We appreciate your patience.

We can assure you that once an attorney has reviewed your file, you will receive a letter advising you of our decision. If it is our determination that the matter should be re-opened, you will be advised and the matter will be re-assigned for further appropriate action. If it is our decision that the matter should remain closed, you will be advised of your right to petition the Supreme Court of California. **If you do not hear from us, it is because the matter has not yet been assigned or reviewed.**

If you would like us to consider new information other than what you have previously provided to us, please advise us, **in writing.** This is a more effective means for us to receive and fully evaluate your concerns. Include copies (only) of any documentation that you have not previously provided which you think it is important for us to review. **Do not re-send information or documentation that you have already provided.** You should send your written comments or information to: Audit and Review, Office of the Chief Trial Counsel, State Bar of California, 1149 South Hill Street, Los Angeles, California 90015.

The State Bar is not your attorney. The State Bar's function is to determine whether a particular complaint warrants disciplinary action. If you believe that you have a civil, criminal or administrative claim related to your complaint, you should consult an attorney regarding any available remedies. You should contact your local or county bar association for referral information.

OFFICE OF THE CHIEF TRIAL COUNSEL/AUDIT AND REVIEW
N02

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF LOS ANGELES

3
     DEPARTMENT NO. B                        HON. WILLIAM BARRY, JUDGE
4

5
     LEON SANDERS,                          )
6                                           )
                         PLAINTIFF,         )
7                                           )
          VS.                               )  NO. TC020274
8                                           )
     WASHINGTON MUTUAL BANK, ET AL.,        )
9                                           )
                                            )
10                       DEFENDANT(S).      )
     ---------------------------------------)
11

12

13
                   REPORTER'S TRANSCRIPT OF PROCEEDINGS
14
                      TUESDAY, OCTOBER 24, 2006
15

16                                            COPY

17
     APPEARANCES:
18
         FOR THE PLAINTIFF:       LEON SANDERS, IN PRO PER
19                                19219 NORTHWOOD AVENUE
                                  CARSON, CA  90746
20                                (310) 637-6939

21
         FOR THE DEFENDANT:       WASHINGTON MUTUAL BANK
22                                BY:  MICHAEL TANNATT, ESQ.
                                  9200 OAKDALE AVENUE
23                                CHATSWORTH, CA 91311

24

25

26
                              ANGELIA PARRISH, CSR #8909
27                                 OFFICIAL REPORTER

28

```
1   CASE NUMBER:            TC020274

2   CASE NAME:              LEON SANDERS VS.

3                           WASHINGTON MUTUAL BANK, ET AL.

4   COMPTON, CA        .    TUESDAY, OCTOBER 24, 2006

5   DEPARTMENT NO. B        HON. WILLIAM BARRY, JUDGE

6   REPORTER:               ANGELIA PARRISH, CSR NO. 8909

7   TIME:                   A.M. SESSION

8

9   APPEARANCES:

10           PLAINTIFF LEON SANDERS, IN PRO PER;

11           DEFENDANT WASHINGTON MUTUAL BANK

12           REPRESENTED BY MICHAEL TANNATT.

13
```

14      THE COURT:  NO. 7 SANDERS VERSUS WASHINGTON MUTUAL,

15   TC020274.

16      MR. SANDERS:  GOOD MORNING, YOUR HONOR.  PLAINTIFF PRO

17   PER LEON SANDERS.

18      THE COURT:  GOOD MORNING, MR. SANDERS.

19      MR. TANNATT:  GOOD MORNING, YOUR HONOR.  MICHAEL

20   TANNATT, T-A-N-N-A-T-T, FOR DEFENDANT WASHINGTON MUTUAL,

21   DEFENDANT AND MOVING PARTY.

22      THE COURT:  WHY DON'T YOU BOTH HAVE A SEAT.

23           DID YOU BOTH GET A CHANCE TO READ MY TENTATIVE

24   COMMENTS THAT I POSTED ON THE BOARD OUTSIDE.

25      MR. SANDERS:  NO, I DIDN'T.

26      THE COURT:  FOR BOTH OF YOUR GUIDANCE, I TRY TO POST

27   COMMENTS ON THE INTERNET THE EVENING BEFORE, AND THEY CAN BE

28   FOUND AT L.A. SUPERIOR COURT DOT ORG, IF YOU WANT TO GET A

1    PREVIOUS VIEW OF WHAT'S COMING UP THE NEXT DAY.  IT'S ALSO

2    POSTED OUT IN THE HALLWAY SO YOU CAN LOOK AND SEE WHAT MY

3    THOUGHTS ARE BEFORE YOU COME IN, GIVES YOU A CHANCE TO

4    FOCUS.

5            HERE'S WHAT I WROTE AND POSTED YESTERDAY:

6    IT'S WASHINGTON MUTUAL'S DEMURRER, AND MY INCLINATION IS TO

7    SUSTAIN THAT WITHOUT LEAVE TO AMEND FOR THE FOLLOWING

8    REASONS:  THERE'S TWO CAUSES OF ACTION ALLEGED, ONE FOR

9    BREACH OF CONTRACT AND ONE FOR FRAUD.

10            WHILE MR. SANDERS HAS BEEN LEFT SHORT BY PRIOR

11   ATTORNEY -- AND I UNDERSTAND AND SYMPATHIZE WITH THAT -- IN

12   THE PARAGRAPHS THAT DEAL WITH THE BREACH OF CONTRACT, I

13   REALLY DON'T SEE WHERE THERE WILL BE AN ABILITY TO STATE A

14   CLAIM AGAINST THIS PARTICULAR DEFENDANT.

15            THE CLAIM IN PARAGRAPH 5 IS THAT WASHINGTON MUTUAL

16   MISAPPLIED AMORTIZATION TABLE IN A MORTGAGE FOR A HOUSE, BUT

17   IT'S CLEAR FROM YOUR DOCUMENTATION, MR. SANDERS, THAT THIS

18   WAS AN ISSUE AS EARLY AS JUNE 2001 WHICH WOULD BE A STATUTE

19   OF LIMITATIONS PROBLEM BECAUSE THE COMPLAINT WASN'T FILED

20   UNTIL AUGUST OF '06.  YEAH, AUGUST 23RD, 2006.

21            PARAGRAPH 6 OF THE COMPLAINT ALLEGES A BREACH OF

22   CONTRACT WITH REGARD TO WASHINGTON MUTUAL BASED ON SOMETHING

23   THAT OCCURRED DURING THE BANKRUPTCY WHICH WERE WRAPPED UP BY

24   JUNE 2001.

25            THEREFORE, WITH REGARD TO THOSE TWO ALLEGED

26   BREACHES, THE MISUSE OR MISAPPLICATION OF AN AMORTIZATION

27   TABLE AND THE FAILURE TO ALLOCATE PROPERLY IN THE BANKRUPTCY

28   PROCEEDING, THE STATUTE OF LIMITATIONS WOULD BE A BAR.

1          WITH REGARD TO PARAGRAPH 7, IT DOES NOT ALLEGE ANY
2    BREACH AGAINST WASHINGTON MUTUAL.  IT JUST RELATES THAT
3    ISSUE OF ANY DAMAGES THAT WERE CAUSED TO BE INCURRED AS A
4    RESULT OF THE FORECLOSURE PROCEEDINGS.

5          THE SECOND CAUSE OF ACTION FOR FRAUD IS A LITTLE
6    BIT AMBIGUOUS.  THE MOVING PAPERS QUESTION THAT THEY WERE
7    EVEN NAMED A FRAUD IN THE SECOND CAUSE OF ACTION.  IT'S
8    CLEAR TO ME THEY WERE BY STATING IT'S WASHINGTON MUTUAL IN
9    PARAGRAPH 2 OF THAT SECOND CAUSE OF ACTION.

10         THEN AGAIN THE FRAUD IS ALLEGED TO HAVE OCCURRED
11   WHEN THE LOAN WAS EITHER OBTAINED IN 1991 OR HAS TO DO AGAIN
12   WITH HOW THE LOAN WAS PAID DOWN.  THAT WAS SOMETHING THAT
13   WAS AN ISSUE BY JUNE OF 2001 FROM THE OPPOSITION PAPERS.

14         IT LOOKS TO ME LIKE THE CLAIMS AGAINST WASHINGTON
15   MUTUAL AREN'T TIMELY.  THEY'RE TIME BARRED BY THE STATUTE OF
16   LIMITATIONS THAT WOULD BE IN EFFECT FOR EITHER A FRAUD CLAIM
17   OR STATUTE OF LIMITATIONS CLAIM.  THAT'S WHERE I'M ASKED AT.

18         WOULD YOU LIKE AN OPPORTUNITY TO COMMENT?

19         MR. SANDERS:  YES, I WOULD, YOUR HONOR.

20         THESE ARE SOME DOCUMENTS HERE THAT --

21         THE COURT:  I'M SORRY, SIR.  I CAN'T LOOK AT THAT.

22         MR. SANDERS:  WELL, MY POINT IS THE DEFENDANT
23   WASHINGTON MUTUAL IN HIS RESPONSE TO THE PLAINTIFFS -- IN
24   ITS RESPONSE TO THE PLAINTIFF'S COMPLAINT ALLEGE THAT IT WAS
25   THREE YEARS -- THREE YEARS WAS THE STATUTE OF LIMITATIONS.
26   SO I FILED THE COMPLAINT TWO DAYS BEFORE THE THREE YEARS
27   TIME WAS UP.  SO THAT WAS WITHIN THE THREE YEARS.

28         THE LOAN WASN'T PAID OFF UNTIL THE 25TH OF AUGUST.

1    I FILED A CLAIM ON THE 23RD.  I WOULD HAVE FILED IT MUCH

2    SOONER IF MY LAWYER HAD OF GIVEN ME THE OPPORTUNITY.

3        THE COURT:  LET ME ADDRESS THAT FOR YOU BECAUSE I SAW

4    THAT IN YOUR PAPERS, AND I UNDERSTOOD WHAT YOU WERE SAYING

5    WITH REGARD TO IT.

6        MY CONCERN IS THAT THE PAPERS THAT WERE SUBMITTED

7    IN CONNECTION WITH THE DEMURRER BY BOTH SIDES INDICATE THAT

8    THERE WAS AN APPRECIATION ON YOUR PART THAT WASHINGTON

9    MUTUAL WASN'T DOING THINGS PROPERLY BACK IN 2001 EVEN THOUGH

10   THE LOAN WASN'T PAID OFF UNTIL RECENTLY AND YOU MANAGED TO

11   GET UNDER THE GUN -- UNDER THE WIRE FOR THE FILING OF THE

12   COMPLAINT IN A TIMELY FASHION FOR THAT.

13       I'M GOING BACK -- I THINK I HAVE TO GO BACK PRIOR

14   TO THAT WHICH WOULD BE INTO 2001 BECAUSE THE PAPERS THAT

15   WERE PROVIDED TO ME SHOW THAT YOU WERE CRITICIZING AND WERE

16   CRITICAL OF WASHINGTON MUTUAL'S PAYMENT SCHEDULE BACK IN

17   2001.  IT'S A LETTER IN THE PACKET OF MATERIALS SHOWING THAT

18   YOU DISAGREED WITH HOW THEY WERE DOING THAT AND IT SHOULD

19   HAVE BEEN PAID OFF IN A MORE EQUITABLE FASHION FROM YOUR

20   PROSPECTIVE.  THAT WOULD BE A STATUTE OF LIMITATIONS PROBLEM

21   BACK IN 2001.

22       MR. SANDERS:  MY REPLY ON THAT, YOUR HONOR, IS THAT THE

23   TIME WAS TOLLING BECAUSE I BROUGHT THE ISSUE TO THE

24   CO-TRUSTEE IN A TIMELY MANNER.  THEY PROMISED TO -- I HAVE

25   DOCUMENTS I FILED WITH THE COMPLAINT -- THAT THEY WOULD

26   INVESTIGATE IT.  I ALSO REPORTED IT TO MY ATTORNEY AT THAT

27   TIME.  SO NONE OF THESE ISSUES WERE RESOLVED.  IT WAS

28   STILL -- IN MY WAY OF LOOKING AT IT, THE BANKRUPTCY THING

1  WAS STILL TOLLING BECAUSE IT WAS ADDRESSED IN A TIMELY
2  MANNER, BUT IT WASN'T RESPONDED TO IN A TIMELY MANNER BY THE
3  DEFENDANT. SO THAT LEAVES THE STATUTE OF LIMITATIONS STILL
4  TOLLING.
5  THE COURT: LET ME ASK YOU A QUESTION ON THAT. I'M
6  SORRY TO INTERRUPT. I JUST WANT TO MAKE SURE I UNDERSTAND
7  WHAT YOU'RE SAYING TO ME.
8  WHOSE BANKRUPTCY WAS IT? WAS IT YOURS?
9  MR. SANDERS: IT WAS MY BANKRUPTCY.
10  THE COURT: NOW WITH REGARD TO THE FACT THAT YOU
11  CONTACTED AN ATTORNEY AND GAVE THE ATTORNEY ADVICE AS TO
12  THEIR BEING A PROBLEM, THAT'S NOT GOING TO BE A DEFENSE IN
13  YOUR FAVOR. YOU MAY HAVE REMEDIES AGAINST THAT ATTORNEY FOR
14  DROPPING THE BALL ON YOU, BUT THE DEFENDANTS ARE STILL
15  ALLOWED TO RAISE THE STATUTE OF LIMITATIONS BAR EVEN IF AN
16  ATTORNEY DIDN'T DO SOMETHING HE SHOULD HAVE.
17  MR. SANDERS: I RAISED IT WITH THE CO-TRUSTEE. THEY
18  PROMISED TO INVESTIGATE IT AND I RESPONDED BACK TO THEM TWO
19  OR THREE TIMES.
20  THE COURT: LET ME SEE WHAT MR. ZANNATTI HAS TO SAY
21  ABOUT THE BANKRUPTCY TRUSTEE ISSUE BECAUSE I DIDN'T REALLY
22  SEE THAT IN THE PAPERS, AND I WANT TO MAKE SURE I UNDERSTAND
23  WHAT'S GOING ON.
24  MR. SANDERS: ONE OF THE REASONS WHY I DREW THIS UP,
25  YOU CAN SEE THE TIME LIMIT. MY ATTORNEY DID ME A
26  DISSERVICE. HE WOULDN'T -- I HAD TO GO TO THE BAR
27  ASSOCIATION TO GET MY PAPERS. SO I HAD TO SCRAMBLE
28  SOMETHING TOGETHER. I DIDN'T HAVE AN OPPORTUNITY TO DO

1    DISCOVERY OR DO ANYTHING TO GET -- PUT A COMPLETE PICTURE
2    OUT ON MY CASE.

3              AS I UNDERSTAND THE LAW, IF AN ISSUE IS BROUGHT
4    UP -- MY WAY OF LOOKING AT IT IS FROM A LEGAL POINT IS IF I
5    ACCUSE THEM OF ACCOUNTING, I COULDN'T GET A JUDGMENT IN NO
6    COURT THAT I CAN THINK OF THAT THEY WERE CALCULATING THE
7    THING WRONG BECAUSE THEY HADN'T DID ANYTHING WRONG.  THESE
8    ARE FIGURES.

9              WHEN THE ACTUAL FRAUD CAME ABOUT IS WHEN THEY
10   ACCEPTED MONEY AFTER THEY KNEW IT WAS DISPUTED FOR A NUMBER
11   OF YEARS.  THEY WENT ON AND MADE A DEMAND IN ESCROW FOR
12   MONEY THEY KNEW THEY SHOULDN'T HAVE BEEN GETTING.  THAT'S
13   WHEN THE -- I LOOK AT IT THAT'S WHEN THE FRAUD COME, WHEN
14   THEY ACTUALLY RECEIVED MONEY, PROFIT, THAT THEY WEREN'T
15   ENTITLED TO.  THAT WAS THE 25TH OF AUGUST IN 2003 WHICH WAS
16   TWO DAYS BEFORE I FILED.  THAT'S WHEN THE FRAUD ACTUALLY
17   OCCURRED, WHEN THEY ACTUALLY RECEIVED IT NOT THE ACCOUNTING.
18   SOMEONE CAN MAKE A MISTAKE IN HAD THE ACCOUNTING.

19             SOMEONE COULD MAKE A MISTAKE IN ACCOUNTING, AND IT
20   COULD -- TO MY JUDGMENT OF THE LAW, IT COULD BE AN ERROR,
21   BUT THEY HAVEN'T DONE ANY HARM TO ANYBODY.  WHERE THE HARM
22   CAME IS WHEN THEY KNOWINGLY KNEW THERE WAS A DISPUTE AND
23   DIDN'T PREVENT IT.

24             THE COURT:  AND THIS WAS IN '03?

25             MR. SANDERS:  THIS WAS IN '03.  THEY KNOW IT WAS A -- I
26   COULD TAKE IT TO COURT ALL DAY AND FILE IT.  THEY
27   CALCULATED -- THEY HAVEN'T DONE ANYTHING WRONG.  THE FIGURES
28   ARE WRONG.  WHEN THEY DID SOMETHING WRONG IS WHEN THEY TOOK

1   MONEY THAT THEY KNEW WAS IN DISPUTE.

2   THE COURT:  LET ME SEE WHEN MR. TANNETT HAS TO SAY

3   ABOUT, FIRST OF ALL, THE TOLLING.

4   PRIVATE COUNSEL:  WITH REGARD TO THE TOLLING DURING THE

5   BANKRUPTCY, THE NICE THING ABOUT MR. SANDERS' COMPLAINT IS

6   IT DOES PROVIDE A LOT OF DOCUMENTS.  SO IF YOU LOOK AT

7   EXHIBITS PAGE 31 AND PAGE 29 TO THE COMPLAINT, IT CLEARLY --

8   THE BANKRUPTCY WAS DISCHARGED AS THE COURT NOTES IN ITS

9   TENTATIVE ON JUNE 15, 2001.  SO ANY TOLLING THAT WOULD HAVE

10  OCCURRED DURING THAT PERIOD OF TIME, I THINK WOULD HAVE BEEN

11  OVER.

12  FURTHERMORE, IT'S CLEAR THAT THE DISPUTE AS

13  PLAINTIFF ALLEGES IN PARAGRAPH 6, THIS IS A MATTER THAT

14  OCCURRED DURING THE BANKRUPTCY, AND IT IS A MATTER THAT WAMU

15  DID ADDRESS TO MR. SANDERS IN THE LETTER THAT MR. SANDERS

16  INCLUDES IN HIS COMPLAINT AT PAGES 14 AND 15 EXPLAINING WHY

17  THE AMORTIZATION PAYMENTS WERE MADE AS THEY WERE DURING THE

18  BANKRUPTCY, AND THIS LETTER IS DATED JUNE 18, 2001, AND IT'S

19  CLEARLY RECEIVED BECAUSE IT WAS ATTACHED TO MR. SANDERS'

20  COMPLAINT.

21  ANY PROBLEM OR DISPUTE WOULD HAVE STEMMED FROM

22  THAT POINT IN TIME AT LEAST, AND IT APPEARS THAT THIS MAY

23  HAVE BEEN AN ONGOING DISPUTE PRIOR TO THAT, AT LEAST FROM

24  THIS PERIOD OF TIME.  AS THE COURT NOTES IN ITS TENTATIVE,

25  THAT'S CLEARLY BEYOND IT STATUTE OF LIMITATIONS.

26  THE COURT:  LET'S GO TO THE SECOND ARGUMENT HE'S MAKING

27  WHICH IS, LOOK, I MAY HAVE HAD MISREPRESENTATIONS MADE TO ME

28  IN CONNECTION WITH THE FRAUD CLAIM, BUT I DIDN'T HAVE A

1   CAUSE OF ACTION UNTIL I SUFFERED DAMAGES, AND I DIDN'T

2   REALLY SUFFER DAMAGES UNTIL THE ESCROW CLOSED IN '03 AND,

3   THEREFORE, MY FRAUD CLAIM IS TIMELY.

4       PRIVATE COUNSEL:  WITH REGARD TO THAT, ANY FRAUD THAT

5   WOULD HAVE OCCURRED WOULD HAVE BEEN DURING THE SERVICING

6   ISSUE.  WE'RE NOT REALLY TALKING ABOUT FRAUD.  WE'RE TALKING

7   ABOUT SERVICING ISSUES HERE, ABOUT WHAT WAMU BELIEVED WAS

8   OWED TO THEM AND WAS EXPLAINED TO HIM ON JUNE 18, 2001.

9       THE COURT:  HE'S ALLOWED TO STATE A DIFFERENT THEORY OF

10  RECOVERY, AND HE STATED THAT ON BREACH OF CONTRACT.  I THINK

11  THERE'S A PROBLEM WITH THE STATUTE OF LIMITATIONS.

12       HE'S ALSO ALLEGING THAT THERE WERE

13  MISREPRESENTATIONS MADE TO HIM, AND WE'RE AT THE DEMURRER

14  STAGE.  SO I HAVE TO ACCEPT WHAT HE SAYS IS TRUE, AND HE'S

15  ALLEGING THAT THERE WERE MISREPRESENTATIONS MADE AND THAT

16  YOUR CLIENT COLLECTED MONEY IN AN IMPROPER FASHION, BUT THEY

17  DIDN'T REALLY SUFFER DAMAGES UNTIL THE ESCROW CLOSED IN '03,

18  AND THEREFORE, HIS CLAIM IS TIMELY.

19       MR. TANNATT:  YOU MEAN THAT HE SUFFERED DAMAGES?

20       THE COURT:  THAT'S WHAT HE'S SAYING.

21       MR. TANNATT:  WHEN WE COLLECTED THE MONEY?

22       THE COURT:  RIGHT.  WHAT'S YOUR RESPONSE TO THAT?

23       MR. TANNATT:  FOR AMOUNTS OWED?

24       THE COURT:  I DON'T KNOW.  THIS IS A DEMURRER.

25       MR. TANNATT:  WELL, BASICALLY, THIS WAS THE AMOUNT THAT

26  WE HAD REPRESENTED TO HIM WAS OWED.  FRAUD IS BASED ON A

27  MISREPRESENTATION.  IT WAS A DEMAND THAT WAS BEING MADE ON

28  HIM, APPARENTLY ACCORDING --- WE WERE GOING FORWARD AND

1   SAYING THAT THESE WERE DEMANDS MADE, AND THERE WAS EVEN A

2   FORECLOSURE SPOKEN OF IF THESE MONIES WERE NOT PAID.

3       THE COURT:  WERE THE COLLECTIONS OF MONEY MADE PURSUANT

4   TO THE BANK SCHEDULE PRIOR TO 2003?

5       MR. TANNATT:  THEY WOULD HAVE BEEN ONGOING IN TERMS OF

6   THE DEMANDS THAT WOULD HAVE BEEN MADE, YES.

7       THE COURT:  DOES THAT HAVE ANY SIGNIFICANCE?

8       MR. TANNATT:  OF SIGNIFICANCE?

9       THE COURT:  YES.

10      MR. TANNATT:  YES, WE WOULD HAVE BEEN DEMANDING

11  COLLECTIONS.  SO WE WOULD HAVE BEEN APPLYING ANY OF THOSE

12  PAYMENTS ACCORDING TO THE AMORTIZATION SCHEDULES AS WE

13  UNDERSTOOD THEM TO BE AND AS THEY WERE LAID OUT IN JUNE 18,

14  2001.

15      THE COURT:  MR. SANDERS, IT ISN'T GOING TO WORK FOR YOU

16  TODAY.  LET ME EXPLAIN WHY I SEE IT THAT WAY.  NOW I'M GLAD

17  WE HAD A CHANCE TO TALK ABOUT THIS.

18          THE BREACH OF CONTRACT CLAIM ISN'T GOING TO WORK.

19  IT'S TOO LATE.  THE ATTACHMENTS TO THE COMPLAINTS AS WELL AS

20  THE ATTACHMENTS TO YOUR OPPOSITION PAPERS SHOWS THAT BY JUNE

21  OF '01 AS TO THE SCHEDULING TABLES -- AND IF MR. TANNICH IS

22  CORRECT, THE BANKRUPTCY -- BY THE DOCUMENTATION I HAVE, THE

23  BANKRUPTCY ENDED IN JUNE OF '01.  ANY TOLLING THAT WOULD

24  HAVE EXISTED, ASSUMING THERE WAS A TOLLING, YOU WERE AT THE

25  BANKRUPTCY STAGE.  I'M NOT SURE THERE WOULD BE A TOLLING IN

26  THAT CONTEXT BECAUSE THE STATE HAS THE OPPORTUNITY TO

27  PROSECUTE CLAIMS.

28          IN ANY EVENT, WITH REGARD TO FRAUD, YOUR INITIAL

1    DAMAGES WOULD BE AS SOON AS YOU STARTED TO PAY DOWN THAT

2    AMORTIZATION LOAN, AND THEN YOU KNEW THAT IN '01.  SO,

3    THEREFORE, THE TRIGGERING POINT FOR THE FRAUD CLAIM CAME AT

4    LEAST BY '01 AND ENDED BY '03.

5         YOU HAVE TO BRING A LAWSUIT BASED ON WHEN

6    SOMETHING TRIGGERS NOT BY WHEN IT ENDS.

7         MR. SANDERS:  MAY I SAY SOMETHING, YOUR HONOR?

8         THE COURT:  YOU NEED TO BE QUICK BECAUSE I HAVE PEOPLE.

9    WAITING.

10        MR. SANDERS:  MY POINT IS THIS, THE BANKRUPTCY COURT

11   CLERK PAID OFF THE LOAN AS THEY BOTH AGREED.  IT WAS PAID

12   OFF IN A TIMELY MANNER.  THEY TOOK OUT 300 AND SOME DOLLARS

13   OF THE SECOND PAYMENT -- WASHINGTON MUTUAL -- WITH ALL THESE

14   FEES THAT YOU SAW IN MY COMPLAINT.

15        THE COURT:  WHAT TIME PERIOD DID THAT HAPPEN?

16        MR. SANDERS:  THAT WAS DURING THE PROCESS OF THE

17   BANKRUPTCY.  I BROUGHT IT TO THE COURT TRUSTEE AND MY

18   ATTORNEY.

19        THE JUSTICE DEPARTMENT SENT ME A NOTICE SAYING

20   THAT THEY WOULD INVESTIGATE.  I GOT BACK WITH THE JUSTICE

21   DEPARTMENT AT A LATER DATE AND ASKED THEM, AND THERE WAS NO

22   RESPONSE.

23        MY ARGUMENT IS THIS:  THAT DAMAGE THAT THEY TOOK

24   THAT MONEY OUT WHILE I WAS UNDER THE PROTECTION OF THE

25   BANKRUPTCY COURT -- ANYONE WHO KNOW ANYTHING ABOUT

26   BANKRUPTCY COURT KNOWS THAT WHEN YOU ARE UNDER A PLAN --

27   THEY SUBMITTED TWO PAYMENTS TO THE BANKRUPTCY COURT THAT I

28   OWED, AND DURING THAT PERIOD OF TIME THEY TOOK $300 AND SOME

1   DOLLARS FROM THE TWO PAYMENTS THAT THE COURT TRUSTEE SENT TO
2   THEM.

3        THE COURT:   LET'S ALL ASSUME THAT'S TRUE --

4        MR. SANDERS:   IT'S TRUE JUST BECAUSE YOU HAVE THE
5   DOCUMENT THAT PROVES IT.   SO THAT CAUSED ME TO HAVE TO BE
6   SUBJECT TO FORECLOSURE BY THE ACTION THAT THEY DID OUTSIDE
7   THE BANKRUPTCY COURT.

8        THE COURT:   AND THAT ALL OCCURRED PRIOR TO JUNE OF
9   2001, RIGHT?

10        MR. SANDERS:   IT WAS PRIOR TO THAT TIME, BUT THE POINT
11   I'M GETTING AT IS THAT THE COURT TRUSTEE HAD PROMISED TO DO
12   SOMETHING ABOUT IT.   THAT'S THE BANKRUPTCY COURT.   THEY
13   DIDN'T DO ANYTHING ABOUT IT.   I COULDN'T MAKE THEM DO
14   ANYTHING ABOUT IT.   THAT'S ONE ISSUE.

15        I BROUGHT IT TO THE CHAIRMAN OF WASHINGTON MUTUAL.
16   YOU SAW THE LETTER ON THAT.   THEY DIDN'T DO ANYTHING ABOUT
17   IT.

18        THE COURT:   THAT LETTER IS FROM JUNE OF '01.

19        MR. SANDERS:   YEAH, BUT WHAT I'M SAYING IS I BROUGHT IT
20   TO EVERYONE'S ATTENTION.   I'M STILL WAITING ON THE COURT
21   TRUSTEE BECAUSE EVEN THE BANKRUPTCY -- I WAS DOWN THERE, AND
22   THEY WERE GOING TO DO THAT COLLECTIONS.   THAT WAS THAT PART
23   THERE.

24        BUT THAT'S JUST ONE OF THE PROBLEMS THAT CAUSED ME
25   TO HAVE TO REFINANCE MY HOUSE BECAUSE THEY THREATENED TO
26   FORECLOSE ME.   ANYONE KNOW THAT WHEN YOU VIOLATE THE
27   BANKRUPTCY COURT AND TRY TO COLLECT MONEY OUTSIDE OF THE
28   PLAN, THAT'S A VIOLATION OF THAT PARTICULAR STATUTE.

1        I'M HANDICAPPED.   THE COURT TRUSTEE PROMISED TO DO
2   SOMETHING.   THEY DIDN'T DO IT.   I BROUGHT IT TO THE
3   ATTENTION OF EVERYBODY.

4        WHAT I'M SAYING ON THE BREACH OF CONTRACT WHEN
5   THEY TOOK -- I COULD FILE WITH THE COURT ALL DAY LONG SAYING
6   THERE'S A DISPUTE IN THE COMPUTER.   THEN THE COURT WOULD ASK
7   ME, WHAT ARE YOUR DAMAGES?   NO DAMAGES YET BECAUSE I HAVEN'T
8   LOST ANYTHING BECAUSE IT'S JUST A MIX UP IN THE FIGURES.
9   WHEN THEY KNEW FOR ALL THOSE YEARS THAT THERE WAS A DISPUTE
10  IN THE WAY THEY WERE CALCULATING -- IT'S OVER A $10,000
11  DISCREPANCY AS YOU SEE IN THE REPORT THAT I GOT THERE.   IF
12  THAT'S NOT FRAUD, I DON'T KNOW WHAT IS.

13       YOU KNOW THESE MISTAKES ARE THERE.   THEY ARE
14  BROUGHT TO YOUR ATTENTION.   I COULDN'T COLLECT A DIME ON
15  CALCULATING THE PAYMENTS.   THEY KNEW AT THE TIME THAT THEY
16  ASKED FOR A DEMAND IN THE PAYOFF IN ESCROW THAT THOSE
17  PAYMENTS WERE WRONG AND STILL SENDING A $10,000
18  DISCREPANCY -- OVER $10,000 DISCREPANCY, THEN THAT'S FRAUD.
19  THAT'S MALICE AFORETHOUGHT FROM ANY STANDPOINT.   YOU KNOW
20  THERE WAS A DISPUTE.

21       I COULD GO IN COURT ALL DAY, YOUR HONOR, AND ASK
22  YOU FOR -- I WANT A JUDGMENT ON THE DISCREPANCY IN FIGURES.
23  YOU WOULD SAY WHAT ARE MY DAMAGES?   I HAVE NO DAMAGES.   THEY
24  JUST GOT THE FIGURES WRONG, BUT WHEN THEY ACTUALLY EXECUTED
25  IT IN 2003 AND DEMANDED OVER $10,000 MORE THAN WHAT THEY
26  WERE ENTITLED TO, THAT'S WHEN THE DAMAGES COME IN.

27       THE COURT:   ALL RIGHT, MR. TANNATT, WHAT HE'S SAYING TO
28  ME IS, LOOK, WE HAD A PAPER DISPUTE, BUT I DIDN'T REALLY

1    HAVE ANY OUT OF POCKET LOSSES UNTIL I PAID OFF THE LOAN.

2         WHAT'S YOUR RESPONSE TO THAT?

3         PRIVATE COUNSEL:   IT SEEMS TO APPEAR TO ME THAT THERE

4    WAS A PAYMENT THAT HE CLAIMS WE TOOK DURING BANKRUPTCY THAT

5    HE CLAIMS THAT WE WERE NOT ENTITLED TO, BUT THAT WAS IN

6    2001.

7         THE COURT:   THAT'S IN '01, BUT NOW HE'S CLAIMING THAT,

8    LOOK, THIS DISPUTE I HAD OVER THE AMORTIZATION TABLES WAS

9    JUST A PAPER DISPUTE.   IF I HAD NEVER REFINANCED, IT WOULD

10   HAVE -- THE LOAN WOULD HAVE PAID OFF OVER TIME, AND I WOULD

11   HAVE BEEN UNHAPPY ABOUT IT, BUT I DIDN'T HAVE ANY ACTUAL OUT

12   OF POCKET LOSSES UNTIL I REFINANCED, AND THEN YOU GUYS TOOK

13   TOO MUCH MONEY ON MY REFINANCE.

14        MR. TANNATT:   I THINK WE STILL GO BACK TO THE LETTERS

15   THAT WERE EXPLAINING THE REASONS THAT WE WROTE TO HIM BACK

16   IN 2001 -- IN JUNE OF 2001, AND THEY WERE STILL DEMANDING

17   MONEY FROM HIM WHICH HE WAS PAYING AT THE TIME.   IT ISN'T

18   THE OVERALL PAYMENT.   IT STEMS BACK FROM 2001, AND HE WOULD

19   HAVE BEEN DAMAGED BEFORE THEN.

20        THE COURT:   I'VE THOUGHT ABOUT THIS A LOT.   I DON'T

21   PARTICULARLY LIKE THE RESULTS, BUT I THINK AT THE END OF THE

22   DAY THE STATUTE OF LIMITATIONS IS A BAR.

23         I'M SORRY, MR. SANDERS, BUT THAT'S WHAT I'M GOING

24   TO HAVE TO DO.   FOR A LOT OF REASONS NOT RELATED TO YOU,

25   YOUR CLAIM IS NOT TIMELY.

26        MR. SANDERS:   YOUR HONOR, MAY I ASK A QUESTION?   WHAT

27   IS THE STATUTE OF LIMITATIONS?   WHAT IS THE COURT RULING ON

28   THE STATUTE?

1        THE COURT:   THE STATUTE OF LIMITATIONS FOR A BREACH OF

2    CONTRACT IS FOUR YEARS.   THE STATUTE OF LIMITATIONS FOR

3    FRAUD IS THREE.

4        MR. SANDERS:   I'M WITHIN THE LIMITS.

5        THE COURT:   I HAPPEN TO DISAGREE.   WITH ALL DUE

6    RESPECT, THE DEMURRER IS SUSTAINED WITHOUT LEAVE TO AMEND.

7            IS THERE AN ORDER IN HERE?

8        MR. TANNATT:   NO.   I WILL PROVIDE IT.

9        THE COURT:   PROVIDE ONE PURSUANT TO RULE 391 OF

10   CALIFORNIA RULES OF COURT, AND YOU WILL GIVE NOTICE AS WELL,

11   MR. TANNETT.

12       MR. TANNATT:   THANK YOU.

13

14               (PROCEEDINGS CONCLUDED.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT NO. B                    HON. WILLIAM BARRY, JUDGE

LEON SANDERS,                        )
                                     )
                    PLAINTIFF,       )
                                     )    NO. TC020274
        VS.                          )
                                     )    REPORTER'S
WASHINGTON MUTUAL BANK, ET AL.,      )    CERTIFICATE
                                     )
                    DEFENDANT(S).    )
_____)

             I, ANGELIA PARRISH, OFFICIAL REPORTER OF THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF

LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING

PAGES 1 THROUGH 14, INCLUSIVE, COMPRISE A FULL, TRUE AND

CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

ABOVE-ENTITLED MATTER, REPORTED BY ME ON OCTOBER 24, 2006.


             DATED THIS 27th DAY OF NOVEMBER, 2006.



                    _____
                    ANGELIA PARRISH, CSR #8909

                         OFFICIAL REPORTER

1                SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                     FOR THE COUNTY OF LOS ANGELES

3
   DEPARTMENT NO. B                      HON. WILLIAM BARRY, JUDGE
4

5
   LEON SANDERS,
6
                          PLAINTIFF,
7
          VS.                              ) NO. TC020274
8
   WASHINGTON MUTUAL BANK, ET AL.,
9

10                        DEFENDANT(S).
11  ------------------------------------------

12

13
                 REPORTER'S TRANSCRIPT OF PROCEEDINGS
14
                          NOVEMBER 3, 2006
15

16                                        COPY

17
   APPEARANCES:
18
      FOR THE PLAINTIFF:       LEON SANDERS, IN PRO PER
19                             19219 NORTHWOOD AVENUE
                               CARSON, CA   90746
20                             (310) 637-6939

21
      FOR THE DEFENDANT        KIMBERLY FANADY, ESQ.
22    MORGAN STANLEY:          (BY COURT CALL)

23

24

25

26                            ANGELIA PARRISH, CSR #8909
                                 OFFICIAL REPORTER
27

28

```
 1    CASE NUMBER:              TC020274

 2    CASE NAME:               LEON SANDERS VS.

 3                             WASHINGTON MUTUAL BANK, ET AL.

 4    COMPTON, CA              FRIDAY, NOVEMBER 3, 2006

 5    DEPARTMENT NO. B         HON. WILLIAM BARRY, JUDGE

 6    REPORTER:                ANGELIA PARRISH, CSR NO. 8909

 7    TIME:                    A.M. SESSION

 8

 9    APPEARANCES:

10              PLAINTIFF LEON SANDERS, IN PRO PER;

11              DEFENDANT MORGAN STANLEY REPRESENTED BY

12              KIMBERLY FANADY.

13

14         THE COURT:  NO. 2 IS THE CASE OF SANDERS VERSUS MORGAN

15    STANLEY, TC020274.

16              COME ON UP, MR. SANDERS.

17         MR. SANDERS:  GOOD MORNING, YOUR HONOR.  LEON SANDERS

18    FOR THE PLAINTIFF, PRO PER.

19         THE COURT:  GOOD MORNING, MR. SANDERS.

20              DO WE HAVE SOMEONE ON COURT CALL FOR THIS?

21         MS. FANADY: YES, YOUR HONOR.  GOOD MORNING.  THIS IS

22    KIMBERLY FANADY APPEARING FOR MORGAN STANLEY.

23         THE COURT:  DID YOU GET A CHANCE TO BE SEE MY

24    TENTATIVE?

25         MS. FANADY:  I DID, YOUR HONOR.  THANK YOU.

26         THE COURT:  VERY WELL.

27              HOW ABOUT YOU, MR. SANDERS?

28         MR. SANDERS:  YES, I DID.
```

1      THE COURT: WELL, MR. SANDERS, IT LOOKS TO ME LIKE THIS
2   IS A REPLAY OF WHAT HAPPENED A COUPLE OF WEEKS AGO WHEN YOU
3   WERE HERE IN CONNECTION WITH WASHINGTON MUTUAL'S MOTION.

4      THERE'S TWO CAUSES OF ACTION THAT HAVE BEEN
5   ALLEGED, BREACH OF CONTRACT AND FRAUD, AND AS I INDICATED TO
6   YOU AT THAT TIME, IT LOOKS TO ME LIKE IT'S GOING BACK TO A
7   PERIOD OF TIME WHEN STATUTE OF LIMITATIONS WAS A PROBLEM,
8   UNDERSTANDING THAT YOU WERE LEFT IN THE LURK BY AN ATTORNEY
9   WHO YOU THOUGHT WAS PROTECTING YOUR INTEREST AT THE TIME.

10      WHY DON'T YOU TELL ME WHAT YOU THINK ABOUT THIS?
11      MR. SANDERS: YES, YOUR HONOR. I WILL BE GLAD TO.

12      I WANT TO RESPOND IN ANSWERING THE QUESTION THAT
13   YOU JUST PUT TO ME TO THE DEFENDANT'S REPLY MEMORANDUM THAT
14   THEY --- TO THE PLAINTIFF'S OPPOSITION.

15      I REFER TO PAGE 4 ---

16   THE COURT: HOLD ON JUST A SECOND. LET ME GET IT.
17   PAGE 6, LINE --

18   MR. SANDERS: PAGE 4, LINE 23 THROUGH 27.

19   THE COURT: HOLD A MINUTE. I GOT THEIR REPLY PAPERS
20   HERE. PAGE 4, LINE 23. OKAY. LET ME READ IT.

21      OKAY. GO AHEAD.

22   MR. SANDERS: IT STATES IN LINE 23, ACCORDING TO ANY
23   SUCH BREACH OF CONTRACT OCCURRED IN THE LOAN AGREEMENT, THEY
24   ARE ALLEGING THAT IT OCCURRED ON NOVEMBER THE 11TH, 1994
25   WHEN I SIGNED THE LOAN AGREEMENTS. IT FURTHER GOES ON, ON
26   LINE 25, SEE MIRALES ** REFERRING TO THE CALIFORNIA FOURTH
27   APPELLATE COURT 2003, AND IT SAYS IT WAS CITED --- IN THIS
28   PARTICULAR CASE, THEY WERE CITING NEAL VERSUS MAGANDA 1971

1    WHERE IT STATES A CONTRACT CAUSE OF ACTION OCCURS WHEN A
2    WRONGFUL ACT IS DONE.

3           NOW I GAVE THE PLAINTIFF'S A COPY OF EACH ONE OF
4    THESE, BOTH WASHINGTON MUTUAL AND MORGAN STANLEY.  I REFER
5    TO THE -- THEY HAVE A COPY AND THE COURT HAS A COPY OF THIS
6    PARTICULAR RULING IN THE PLAINTIFF'S FORM -- IN THE UNITED
7    STATES DISTRICT COURT RULING REGARDING SANDERS.  YOU WILL
8    NOTICE MY NAME AT THE BOTTOM OF THIS PARTICULAR RULING.

9           THE COURT:  IS THIS ONE OF YOUR EXHIBITS?

10   MR. SANDERS:  NO, YOUR HONOR.  I ATTEMPTED TO GIVE YOU
11   THIS LAST WEEK, AND YOU SAID NO.  SO I COULDN'T GIVE IT TO
12   YOU, BUT I GAVE BOTH WASHINGTON MUTUAL'S ATTORNEY AND MORGAN
13   STANLEY A COPY OF THIS.  YOU DIDN'T HAVE A COPY BECAUSE YOU
14   SAID NO.  YOU WOULDN'T TAKE IT.

15          I REFERRED TO A RULING TO THE PLAINTIFF LEON
16   SANDERS NAMED AT THE BOTTOM OF THIS PARTICULAR RULING.  IT
17   SAYS ORDINARILY CALIFORNIA A PLAINTIFF MAY NOT RECOVER
18   PUNITIVE DAMAGES FOR CAUSE OF ACTION FOR BREACH OF CONTRACT.
19   CALIFORNIA CIVIL CODE 3294 PROVIDES IN AN ACTION OR SUCH
20   BREACH OF OBLIGATION ARISING WHERE IT IS PROVEN BY CLEAR AND
21   CONVINCING EVIDENCE THAT THE DEFENDANT IS GUILTY OF
22   OPPRESSION, FRAUD OR MALICE, THE PLAINTIFF IN ADDITION TO
23   DAMAGES MAY RECOVER DAMAGES FOR THE SAKE OF A WAY OF
24   PUNISHING THE DEFENDANTS.  THEN IT GOES ON TO SAY ON LINE 23
25   EXCEPT WHEN A WRONGFUL ACT OR A TORT IS DONE.

26          THE PLAINTIFF'S ARGUMENT HERE IS THERE ARE TORTS
27   IN THE YEARS OF THE ALLEGED 1994 AS THE DEFENDANT IS
28   DECLARING HERE THAT THE BREACH OCCURRED.  A TORT HAD NOT

1    OCCURRED.

2              ALSO WHEN I SUBMITTED THESE PAPERS TO GIVE BOTH

3    DEFENDANTS A COPY OF THIS DOCUMENT, I ALSO CITED A COPY OF

4    THE FEDERAL TRADE COMMISSIONS ACT PURSUANT TO THIS SAME

5    AGREEMENT HERE.  IF YOU WANT A COPY, I'LL GIVE IT TO YOU.

6    PURSUANT TO THE SAME AGREEMENT WHERE THE FEDERAL TRADE

7    COMMISSION --- WHICH I GOT THESE COPIES FROM THE FEDERAL

8    TRADE COMMISSION'S OFFICE SENT TO MY HOUSE FROM THE FEDERAL

9    TRADE COMMISSION IN WASHINGTON, D.C., STATED WHAT

10   CONSTITUTED FRAUD.  SO THIS IS A FEDERAL STATUTE I'M CITING,

11   AND IT IS A STATE STATUTE HERE.

12             FOR ME TO FILE A CLAIM IN 1994, A TORT HAD NOT

13   OCCURRED.  A TORT OCCURRED ON APRIL 23RD, 2003 WHEN, FOR

14   EXAMPLE, JUST ONE OTHER THING I WOULD LIKE TO BRING YOUR

15   ATTENTION HERE.  I WROTE IT DOWN HERE.

16             IN MY OPPOSITION --- IN PLAINTIFF'S OPPOSITION,

17   EXHIBIT 4, THE DEMURRER SHOWS THAT ONE SET OF ACCOUNTING

18   RECORDS WAS PRESENTED FROM MORGAN STANLEY, AND IN EXHIBIT 41

19   THROUGH 51 IN THE PLAINTIFF'S OPPOSITION TO THIS DEMURRER,

20   IT SHOWS A DIFFERENT PAYMENT RECORDS, AND IN EXHIBITS 41

21   THROUGH 44 SHOWS ANOTHER DIFFERENT ACCOUNTING RECORDS.  SO

22   THIS IS THREE DIFFERENT ACCOUNTING RECORDS THAT OCCURRED

23   DURING THIS PERIOD AND ONGOING.  EACH ONE OF THEM DIFFERENT

24   FROM THE OTHER.  NEITHER ONE OF THEM WHO GRANT THE

25   PLAINTIFF'S ANY DAMAGES BECAUSE THERE WAS NO WRONG HAD

26   OCCURRED.  NO TORT HAD OCCURRED AT THIS PARTICULAR PERIOD.

27             THE COURT:  LET ME ASK THE CLERK TO PICK UP THE

28   DOCUMENT FROM MR. SANDERS SO I CAN TAKE A LOOK AT IT.

1    MS. FANADY:   YOUR HONOR, THIS IS KIMBERLY FANADY.   IF I

2  MAY, I'M NOT SURE WHAT DOCUMENT MR. SANDERS IS HANDING UP.

3  IS THAT A COPY OF A COURT DOCUMENT?

4    THE COURT:   I HAVEN'T GOT IT YET.   I DON'T KNOW.

5    MR. SANDERS:   THE DOCUMENTS FOR THE FEDERAL TRADE

6  COMMISSION, I DON'T HAVE THEM WITH ME, BUT I CAN GET THEM TO

7  YOU.   THEY BOTH HAVE COPIES OF THOSE.

8    THE COURT:   THANK YOU.   THE COURT HAS BEEN PROVIDED

9  WITH TWO PAGES --- ACTUALLY THREE PAGES BY MR. SANDERS.   ONE

10  IS A PAGE FROM PLAINTIFF'S OPPOSITION TO DEFENDANT MORGAN

11  STANLEY'S MOTION FOR DEMURRER OF PLAINTIFF'S CASE, AND I

12  MUST HAVE THAT.   DON'T I?

13    MR. SANDERS:   YOU DON'T HAVE THAT ONE.   I JUST TYPED

14  THAT ONE UP LAST NIGHT, BUT THOSE DOCUMENTS THERE, BOTH

15  DEFENDANTS AND THE PLAINTIFF HAVE THE OTHER ONE, AND I

16  ATTEMPTED TO GIVE THEM TO YOU ON THE 24TH BUT YOU REFUSED

17  THEM.

18    THE COURT:   WELL, I REFUSED --- WHICH ONE DID YOU SAY I

19  REFUSED?   THE TWO-PAGE DOCUMENT?

20    MR. SANDERS:   THE TWO-PAGE DOCUMENT AND ALSO I HAD THE

21  FEDERAL TRADE COMMISSION RULINGS ON THAT.

22    THE COURT:   HOLD ON A MINUTE.   LET ME TAKE A LOOK AT

23  THIS.

24    THE REASON I DON'T SPECIFICALLY RECALL REFUSING

25  ANYTHING AT THE LAST HEARING ON THE MOTION MADE BY

26  WASHINGTON MUTUAL, BUT IF I DID, IT WAS BECAUSE IT WAS BEING

27  PROVIDED TO ME FOR THE FIRST TIME AT THE HEARING, AND I

28  DON'T NORMALLY LOOK AT THINGS THE FIRST TIME AT THE HEARING.

1           I'M LOOKING AT THE DOCUMENT.  IT LOOKS LIKE A

2   PLEADING FORM.  WHERE DID YOU GET THIS FROM?

3           MR. SANDERS:  THE COURT, THE FEDERAL COURT.  MY NAME IS

4   ON THE BOTTOM.  THAT'S A CASE THAT I HAVE IN THE FEDERAL

5   COURT WHICH THE JUDGE MADE THIS RULING.  IF YOU'LL NOTICE ON

6   THE SECOND PAGE THERE, IT SAID PUNITIVE DAMAGES.  I WAS

7   ALLOWED PUNITIVE DAMAGES BECAUSE IF I WASN'T -- DID NOT

8   WAIVE MY RIGHT FOR PUNITIVE DAMAGES IN THE CONTRACT AND HAD

9   KNOWLEDGE OF IT, CITING ALEXANDER ON THE NEXT PAGE THERE, IT

10  DOESN'T COUNT.

11          THE COURT:  WELL, THAT ISN'T VERY PERSUASIVE TO ME IN

12  THIS CASE, MR. SANDERS.  THIS IS A STATE COURT.  I

13  UNDERSTAND WHAT THE STATE COURT LAW IS.  IT LOOKS TO ME LIKE

14  A QUICK SKIM OF THESE TWO PAGES YOU WERE ASKING THE FEDERAL

15  COURT TO SUSTAIN A CLAIM FOR PUNITIVE DAMAGES IN CONNECTION

16  WITH THE CONTRACT CLAIM OR TO ADD IT, AND THE COURT SAID NO.

17  IT LOOKS LIKE THE COURT SAID NO.

18          MR. SANDERS:  NO, THEY DIDN'T, YOUR HONOR.

19          THE COURT:  IN ANY EVENT, I DON'T PARTICULARLY SEE

20  WHERE THIS IS RELEVANT TO THE ISSUES THAT HAVE BEEN RAISED

21  BY MORGAN STANLEY'S DEMURRER.

22          MR. SANDERS:  SHE CITED THE CALIFORNIA LAW THAT

23  PROVIDES FOR THIS DAMAGES AND WHEN A TORT BEGINS.  A TORT

24  BEGINS AFTER DAMAGES OCCUR.

25          THE COURT:  GOING BACK TO THE PART YOU CITED IN THE

26  REPLY PAPERS ON PAGE 4, LINES 23 THROUGH 25, YOU STATE TWO

27  CAUSE OF ACTION. ONE IS BREACH OF CONTRACT AND ONE IS FOR

28  FRAUD.

1        SO CLEARLY ON THE BREACH OF CONTRACT CLAIM WHICH
2    IS WHAT THE PAGE 4, LINE 23 THROUGH 26 REFERENCES TO, IT'S
3    BLACK LETTER LAW THAT A CONTRACT CAUSE OF ACTION ACCRUES
4    WHEN THE BREACH IS DONE, NOT WHEN THE DEFENDANT DISCOVERS HE
5    OR SHE HAS A CAUSE OF ACTION TO PURSUE.

6        IN THIS CASE AS I RECALL IT -- TELL ME IF I'M
7    WRONG, MR. SANDERS -- YOUR COMPLAINT IN THIS CASE IS THAT
8    THE LENDING INSTITUTIONS USED THE WRONG LOAN AMORTIZATION
9    SCHEDULE AND DENIED YOU THE REDUCTION OF THE PRINCIPAL THAT
10   YOU THINK YOU WERE ENTITLED TO IN THIS LOAN.  IS THAT RIGHT?

11       MR. SANDERS:  THERE WAS A REPEATED EFFORT IN THE
12   ACCOUNTING.  ALL THE PAPERS WAS WRONG ALL THE TIME.  THAT'S
13   THREE DIFFERENT VERSIONS.

14       AS I SAY BEFORE AND AS HE CITES IN THIS PARTICULAR
15   LAW OF 1971, IT DOESN'T BECOME DAMAGE UNTIL AN ACT THAT
16   WOULD CAUSE YOU TO RECOVER DAMAGES.  IN THESE THREE
17   DIFFERENT ACCOUNTING THAT THEY GAVE ME, I COULD HAVE FILED A
18   COURT -- AS I TOLD YOUR HONOR LAST HEARING, I COULD FILE A
19   COURT ON ALL THREE OF THOSE DIFFERENT ACCOUNTING ACTS, AND I
20   COULD ASK THE COURT FOR WHAT?  NOTHING BECAUSE I HADN'T LOST
21   ANYTHING.  SO HOW COULD I RECOVER SOMETHING?  HOW COULD A
22   TORT HAVE OCCURRED WHEN THERE WERE NO DAMAGES?

23       THE COURT:  RIGHT.  THIS IS THE EXACT SAME ISSUE THAT
24   CAME UP BEFORE IN YOUR VIEW -- AND BEFORE I MEAN IN
25   CONNECTION WITH WASHINGTON MUTUAL.  IN YOUR VIEW YOU DIDN'T
26   ACTUALLY SUFFER ANY DAMAGES UNTIL THE LOAN WAS PAID OFF AND
27   YOU AT THAT POINT DIDN'T RECEIVE THE EQUITY OR THE CAPITAL
28   BACK THAT YOU EXPECTED TO RECEIVE.

1    MR. SANDERS:  $10,000 LOAN FROM MORGAN STANLEY, $10,000

2    FROM -- OVER $10,000 FROM WASHINGTON MUTUAL AND MONIES THAT

3    THEY WASN'T ENTITLED TO.

4        THE COURT:  LET ME SEE WHAT MISS FANADY HAS TO SAY

5    ABOUT THAT PARTICULAR ISSUE.

6        MISS FANADY, DO YOU UNDERSTAND WHAT I WAS

7    REFERRING TO?

8        MS. FANADY:  I THINK SO, YOUR HONOR.  I THINK SO.

9        YOUR HONOR, THE LOAN WAS PAID OFF THROUGH THE

10   BANKRUPTCY THROUGH THE CONFIRMED BANKRUPTCY PLAN.  THIS IS

11   ESSENTIALLY A COLLATERAL EVENT ON THAT.  IF THERE WAS ANY

12   PROBLEM WITH THE LOAN BEING PAID OFF, THAT SHOULD HAVE BEEN

13   ADDRESSED THROUGH THE BANKRUPTCY.  SO SINCE IT WAS NOT

14   APPARENTLY OR WAS NOT TO MR. SANDERS' SATISFACTION, IN ANY

15   CASE IT CAN'T BE ADDRESSED NOW.

16       THE COURT:  THIS IS THE NEW ISSUE THAT THIS PARTICULAR

17   DEFENDANT IS RAISING, MR. SANDERS.  IN THE BANKRUPTCY

18   PETITION YOUR ESTATE IS REPRESENTED BY A TRUSTEE, AND WHILE

19   YOU OBVIOUSLY ARE NOT SATISFIED WITH WHAT THE TRUSTEE DID, I

20   THINK THIS IS AN ADDITIONAL GROUNDS FOR SUSTAINING THE

21   DEMURRER.

22       GO AHEAD AND TELL ME WHAT YOU'D LIKE TO DO.

23       MR. SANDERS:  YOUR HONOR, WITH ALL DUE RESPECT TO THE

24   COURT AND TO BOTH DEFENDANTS, I THINK EVERYONE IS MISSING

25   THE WHOLE POINT AND THAT IS THE BANKRUPTCY COURT HAS NOTHING

26   TO DO WITH MY LOAN AGREEMENTS.  EVERY CITIZEN IN THE UNITED

27   STATES HAS A RIGHT TO FILE BANKRUPTCY.  THOSE ARE TWO

28   DIFFERENT ISSUES.

1          THE PLAN WAS PAID OFF WITH MONIES THROUGH THE

2  COURT TRUSTEE THAT DIDN'T TOUCH MY HANDS, THE PLAINTIFF'S

3  HANDS.  WHAT WASHINGTON MUTUAL DID, INSTEAD OF APPLYING THE

4  TWO PAYMENTS THAT THE COURT TRUSTEE SENT TO THEM THAT THEY

5  SUBMITTED TO THE BANKRUPTCY COURT FOR DEMAND FOR THAT AMOUNT

6  OF MONEY, THEY DIVERTED A PART OF IT AND CHARGED OTHER

7  THINGS.

8          ONCE I SATISFIED THE PLAN WHICH WAS A 36-MONTH

9  PLAN, THE LOAN GOES BACK INTO EFFECT AS IF NOTHING HAPPENED.

10  THAT HAS NOTHING TO DO WITH IT.  SO THIS IS NOT A CASE

11  AGAINST THE BANKRUPTCY COURT.

12          FOR EXAMPLE, IF WASHINGTON MUTUAL HADN'T

13  THREATENED ME WITH FORECLOSURE FOR THESE PAYMENTS THAT THEY

14  SUBSIDIZED -- THE PAYMENTS THAT THE COURT TRUSTEE SENT TO

15  THEM AND PUT THEM INTO FEES SUCH AS INSPECTION FEES AND

16  APPLIED THOSE TWO PAYMENTS THAT THEY ASKED THE COURT FOR TO

17  MY ACCOUNT, WE WOULD BE STILL MAKING PAYMENTS TO WASHINGTON

18  MUTUAL.

19          THEY THREATENED ME BY TAKING 300 AND SOME DOLLARS

20  FROM ONE OF THOSE PAYMENTS AND CLAIMING THAT THEY DID AN

21  INSPECTION WHICH WAS VIOLATION OF THE LAW BECAUSE YOU'RE NOT

22  SUPPOSED TO CHARGE ANYBODY IN BANKRUPTCY FOR ANYTHING

23  OUTSIDE THAT BANKRUPTCY PLAN WHILE IT'S UNDER THE PROTECTION

24  OF THE BANKRUPTCY COURT.

25          THESE ATTORNEYS ARE VERY MUCH MORE SHARP ON THE

26  LAW THAN I AM.  THEY KNOW THAT THIS IS THE LAW.  YOU CANNOT

27  DO THOSE KIND OF THINGS.  SO THIS HAS NOTHING TO DO WITH ME

28  SATISFYING THE PLAN OF THE BANKRUPTCY COURT.  THIS HAS TO DO

1   WITH A LOAN THAT I MADE ON MY PROPERTY.

2        THE COURT:  IS IT IN YOUR VIEW --

3        MR. SANDERS:  IT'S TWO DIFFERENT THINGS ALL TOGETHER.

4        THE COURT:  MR. SANDERS, IS IT YOUR VIEW THAT

5   WASHINGTON MUTUAL VIOLATED THE ORDERS OF THE BANKRUPTCY

6   COURT?

7        MR. SANDERS:  THAT'S IT CORRECT.  YES, SIR.

8        THE COURT:  ALL RIGHT.  I THINK THE MOVING PAPERS ARE

9   WELL TAKEN, MR. SANDERS.  I UNDERSTAND THE POINTS THAT

10  YOU'VE BEEN TRYING TO MAKE WITH ME.  I LOOKED AT THE PAPERS

11  YOU'VE PROVIDED AND I'VE HEARD YOU.  UNFORTUNATELY, WE'RE

12  GOING TO HAVE TO AGREE TO DISAGREE ON THIS.  I DON'T SEE IT

13  YOUR WAY.  I AM GOING TO SUSTAIN THE DEMURRER WITHOUT LEAVE

14  TO AMEND.

15       MR. SANDERS:  I'M TRYING TO GET THE COURT'S DEFINITION.

16  I GOT THE DEFINITION.  I DIDN'T GET IT THE LAST TIME.  I GOT

17  THE COURT'S DEFINITION -- I MEAN I GOT THE DEFENDANTS'

18  DEFINITION THAT THEY'RE ALLEGING THAT THE BREACH OF CONTRACT

19  STARTED WHEN I MADE THE LOAN OUT 10 YEARS AGO, AND I CAN'T

20  SEE HOW THAT MAKES ANY SENSE AT ALL BECAUSE THEY ARE THE

21  ONES THAT CREATED THIS SITUATION, NOT THE PLAINTIFF.

22            SO WHAT I'M TRYING TO ASK IS WHAT THE COURT --

23  WHAT DATE IS THE COURT SAYING THAT THE BANKRUPTCY

24  OCCURRED -- THAT THE BREACH OCCURRED?

25       THE COURT:  WELL, I DON'T HAVE THE EXACT DATE IN FRONT

26  OF ME, BUT WHAT I CAN TELL YOU IS MY RECOLLECTION IS THIS

27  LOAN GOES BACK INTO THE EARLY 1990S, RIGHT?

28       MR. SANDERS:  WE HAVE TWO DIFFERENT LOANS WE'RE TALKING

1   ABOUT HERE.

2       THE COURT:  WHEN DOES THIS ONE GO BACK TO?

3       MR. SANDERS:  ONE GOES BACK IN '91 AND ONE GOES BACK IN

4   '94.  THEY OBVIOUSLY CAN'T HAVE THE SAME DATE OF BREACH WHEN

5   THERE'S THREE YEARS DIFFERENCE BECAUSE THEY'RE TWO DIFFERENT

6   LOANS.

7       THE COURT:  THE REALITY IS THAT FRAUD IT'S A THREE

8   YEARS STATUTE OF LIMITATIONS AND BREECH OF CONTRACT IT'S

9   FOUR.

10      MY UNDERSTANDING IS THAT YOUR COMPLAINT IS THE WAY

11  THE AMORTIZATION SCHEDULES WERE SET UP, YOU AT THE END OF

12  THE DAY DIDN'T RECEIVE THE AMOUNT OF EQUITY YOU INTENDED TO

13  RECEIVE.  THE AMORTIZATION SCHEDULES WOULD HAVE BEEN CLEAR

14  FROM THE OUTSET, AND I THINK YOUR BASIC COMPLAINT OF HOW

15  THIS MORGAN STANLEY DEFENDANT ALLOCATED MONEY HAS TO DO WITH

16  HOW IT WAS APPROVED IN THE BANKRUPTCY OR ALTERNATIVELY --

17      MR. SANDERS:  IT HAS NOTHING TO DO WITH THE BANKRUPTCY.

18      THE COURT:  YOU NEED TO NOT INTERRUPT ME, MR. SANDERS.

19      MR. SANDERS:  I'M SORRY.

20      THE COURT:  AND ALTERNATIVELY, IF YOU THINK THEY

21  VIOLATED A BANKRUPTCY PROCEEDING OR VIOLATED A SCHEDULE OR

22  PROTOCOL THAT WAS SET UP BY THE TRUSTEE IN BANKRUPTCY, THEN

23  YOUR REMEDIES GO BACK TO BANKRUPTCY AND NOT HERE.

24      I DON'T HAVE ANY JURISDICTION TO ADJUDICATION WHAT

25  SHOULD OR SHOULDN'T HAVE HAPPENED IN THE BANKRUPTCY COURT.

26  THAT'S THE BASIS OF THEIR DEMURRER, AND I FIND IT HAS MERIT.

27  I'VE HEARD ALL I CAN FROM YOU, SIR, BECAUSE I HAVE OTHER

28  PEOPLE WAITING, AND I AM GOING TO SUSTAIN THE DEMURRER

1    WITHOUT LEAVE TO AMEND.

2              THANK YOU VERY MUCH.

3         MS. FANADY:   THANK YOU, YOUR HONOR, AND THANK YOU FOR

4    LETTING ME APPEAR BY COURT CALL.   I APPRECIATE THAT VERY

5    MUCH.

6         THE COURT:   VERY WELL.

7

8              (THE PROCEEDINGS CONCLUDED AT 9:20 A.M.)

9

10                        --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               FOR THE COUNTY OF LOS ANGELES

3
   DEPARTMENT NO. B                    HON. WILLIAM BARRY, JUDGE
4

5
   LEON SANDERS,                       )
6                                      )
                        PLAINTIFF,     )
7                                      )   NO. TC020274
        VS.                            )
8                                      )   REPORTER'S
   WASHINGTON MUTUAL BANK, ET AL.,     )   CERTIFICATE
9                                      )
                        DEFENDANT(S).  )
10  _____)

11

12

13

14

15          I, ANGELIA PARRISH, OFFICIAL REPORTER OF THE

16  SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF

17  LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING

18  PAGES 1 THROUGH 12, INCLUSIVE, COMPRISE A FULL, TRUE AND

19  CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN THE

20  ABOVE-ENTITLED MATTER, REPORTED BY ME ON NOVEMBER 3, 2006.

21

22          DATED THIS 27th DAY OF NOVEMBER, 2006.

23

24

25          _____
                 ANGELIA PARRISH, CSR #8909

26                    OFFICIAL REPORTER

27

28